CLUB ASSISTANCE PROGRAM, INC., Plaintiff,

v.

Jack J. ZUKERMAN, et al., Defendants.

No. 84 C 1699.

United States District Court, N.D. Illinois, E.D.

Nov. 29, 1984.

Anthony C. Valiulis, Kenneth A. Wexler, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for plaintiff.

Anthony J. Pauletto, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's September 10, 1984 memorandum opinion and order (the "Opinion," 594 F.Supp. 341) (1) denied as untimely the motion of defendants Jack Zukerman ("Zukerman"), William Feldstein, Jr. and Murray Scheer to transfer venue under Fed.R.Civ.P. ("Rule") 12(b)(3) and (2) granted in part and denied in part defendants' Rule 12(b)(2) motion to dismiss the various counts of the Complaint.[1] Now defendants move under 28 U.S.C. § 1404(a) ("Section 1404(a)") for transfer to the Central District of California. For the reasons stated briefly in this memorandum opinion and order, the motion is granted.

### Nature of the Case [2]

Defendants are officers and directors of Delaware Genesis, Inc. ("Genesis"), a Los Angeles-based company "in the business of warehousing, marketing, and selling weight control products, diets, food packages, behavior modification programs, and other health related plans and items" (Complaint ¶ 6). On May 27, 1983 Genesis, acting through defendants, entered into an agreement (the "Contract") with Club Assistance Program, Inc. ("CAP") for marketing-consultant services to help promote sales of Genesis' products in Illinois. Since that time Genesis has not paid CAP all money due, or delivered any of the Genesis stock to which CAP is entitled, under the Contract. On February 29, 1984 Genesis filed a petition for Chapter 11 bankruptcy reorganization in the Central District of California.

CAP claims defendants are responsible for Genesis' incomplete performance of the Contract because they looted, and generally took unreasonable profits from, Genesis. CAP asserts defendants acted against it specifically in an effort to hide their wrongdoing by deliberately misinterpreting the Contract, then by lulling CAP into a false sense of security by misrepresenting to CAP that Genesis would be able to pay its debts.

After the Opinion, CAP remains with three surviving claims. They charge defendants with having:

1. violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (Count I);

2. tortiously interfered with the Contract by inducing Genesis to breach it (Count II); and

3. committed fraud by (a) looting Genesis and (b) misrepresenting its financial condition to CAP (Count III).

### Section 1404(a) Transfer

Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice," to any district where an action "might have been brought." Because defendants are California domiciliaries, this action could unquestionably have been brought in the Central District of California (28 U.S.C. § 1391(a)). There is similarly no doubt the action should be transferred there.

Section 1404(a) calls for a balancing exercise, with the burden on defendants to show a significant tipping in their favor. Among the relevant factors are those described in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) for deciding forum non conveniens cases. But (despite CAP's erroneous assertion to the contrary [3]) this

---

1. Counts IV and V were dismissed, and portions of Count I were stricken. Counts II and III and portions of Count I survived the motion.

2. This statement is taken from the Opinion, with footnotes omitted.

3. Unfortunately CAP's Memorandum is often wholly unreliable in its statements of law. For example, it astonishingly cites *Norwood* (cited at the end of this paragraph of the text) for the proposition that "the analysis [by *Gulf Oil* under the forum non conveniens doctrine] has not

Court may grant transfers more freely under Section 1404(a) than under the older forum non conveniens doctrine. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981); *Norwood v. Kirkpatrick*, 349 U.S. 29, 30–32, 95 S.Ct. 544, 545–46, 99 L.Ed. 789 (1955).

■ Only one factor weighs in CAP's favor here: its choice of an Illinois forum. As this Court reconfirmed in *Associated Mills, Inc. v. Rush Hampton Industries, Inc.*, 588 F.Supp. 1164, 1165–66 (N.D.Ill. 1984), that choice is simply one factor among many to be considered. *Associated Mills*, however, went on to echo the teaching of *Norwood*, 349 U.S. at 32, 75 S.Ct. at 546 that plaintiff's forum selection is significantly less weighty under Section 1404(a) than under forum non conveniens.

■ Here CAP's choice of forum is heavily outweighed by considerations of the convenience of witnesses [4] and (less importantly) the location of relevant documents. CAP's case is based entirely on actions that took place in California in the context of Genesis' business operations. Genesis' sole office is in California and all of its employees and outside accountants reside there (Zukerman Aff. ¶¶ 2–8). If defendants in fact looted Genesis, they did so in California before California witnesses. They took California assets and concealed their loot-ing from California accountants by means of California documents. Their asserted misrepresentations of Genesis' financial condition took place during two long-distance calls (with Zukerman on one end of the telephone line—in California), and their alleged inducement of Genesis' breach of its contract took place there. California sources of proof are obviously the key (if not indeed the sole) elements of CAP's case on liability.[5]

■ According to Zukerman Aff. ¶ 5, Genesis has 146 California employees (this does not take into account its outside accountants). Among the likely witnesses as to Genesis' finances—all California residents—are the three defendants, the outside accountants, Genesis' Vice-President of Finance and at least some of the 14 employees of Genesis' Finance/Accounting Division. Moreover, a great number of Genesis' business records may be relevant, because CAP charges an elaborate scheme involving millions of dollars and covering seven or eight months.[6]

On the Illinois side of the balance, CAP can suggest only five potential Illinois witnesses (Weiner Aff. ¶¶ 7–8). Even at that, it fails to explain the importance or relevance of the testimony of three of those witnesses—Art Shay, David Parsons and Chuck Leve (Weiner Aff. ¶¶ 7–8)—or even

---

changed" since Section 1404(a) was enacted. In fact *Norwood* (at the very page cited by CAP, 349 U.S. at 32!) announced exactly the opposite rule: that Section 1404(a) *has* changed the analysis by making "the discretion to be exercised ... broader" in "permit[ting] courts to grant transfers upon a lesser showing of inconvenience."

**4.** Convenience of the parties appears to be a standoff. All three defendants are California residents, while CAP's two principals (Alan Schwartz and David Weiner) reside in Illinois. Neither CAP nor Genesis has an office outside its home state. Thus each party would be equally inconvenienced by litigating on the other's home turf.

**5.** CAP's argument that Genesis had a number of out-of-California distributors misses the point (though to be fair, CAP sought to respond to

defendants' assertion that most of its distributors were in California). Neither party has identified any in-state or out-of-state distributor involved in, or even with knowledge of, defendants' allegedly fraudulent activities. Distributors appear to play no role in the case, and even if they did, non-Illinois distributors would scarcely render Illinois a more convenient forum.

**6.** This Court has had occasion to remark in other Section 1404(a) cases that in these days of massive document discovery and photocopying the need to transport copies of documents from a party's home base to a distant forum weighs less heavily in the scales. But where as here the relevant document location appears so one-sided, it remains a consideration having some significance. This is so despite CAP's stated willingness to conduct discovery on site in California.

to identify them.[7] This Court can only assume their testimony (even if presumed relevant) is less significant than the testimony of the numerous essential California witnesses. Even on a different assumption, however, the balance remains substantially in defendants' favor. Finally, CAP also says it will introduce its Illinois business records to prove damages, but it gives no indication those records are voluminous or would be difficult to transport.

Clearly, then, convenience of witnesses weighs heavily in favor of California. And that balance is tipped even more strongly in the same direction by the location of most of the relevant documents.

■ CAP's various untenable arguments[8] contest among themselves for the label of "least persuasive." At least a strong contender is its suggestion that the interest of justice militates against transfer because *Hokama v. E.F. Hutton & Co.,* 566 F.Supp. 636, 643–44 (C.D.Cal.1983) indicates "the Central District of California" is misinterpreting RICO and might thus force CAP into a wasteful appeal of an adverse ruling. That contention has two certain flaws and the intriguing possibility of a third:

1. To construe a single decision by a single judge as the position of an entire court of 22 judges[9] is of course nonsense. Absent a Ninth Circuit decision on point, judges there are no different from judges here in feeling free to reach their own decisions independently. In fact *Hokama* reflects very much a minority view of a still-unsettled area in civil RICO, though some aspects of the Second Circuit's recent opinion in *Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482 (2d Cir.1984) come close to espousing the *Hokama* result.[10] Simply in terms of probability, CAP would appear no more or less likely to encounter an adverse decision on the legal issue in California than here (and who is to say at this point, with any degree of certainty, how the issue will ultimately be resolved by the Supreme Court?).

2. CAP would have this Court engage in two entirely impermissible actions:

 (a) predict this Court's findings on the legal sufficiency of CAP's RICO

---

**7.** That deficiency in CAP's affidavit reinforces the adage that people who file glass affidavits should not throw stones. CAP Mem. 7 criticizes Genesis' affidavit for similar (though less serious) inadequacies.

**8.** In addition to the misstatements referred to in nn. 3, 10 and 11, for example, CAP Mem. 3 cites "*Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 156 (3d Cir.1980), *rev'd on other grounds,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)" for the obviously incorrect proposition that "[a]ll three parts of the test [convenience of parties and witnesses and the interest of justice] must be satisfied before a case can be transferred to a different district" under Section 1404(a). CAP was safe in saying the Supreme Court disposed of the appeal "on other grounds," because the case was a forum non conveniens (not a Section 1404(a)) case, and the Court of Appeals' cryptic passing comment to which CAP appears to refer did not focus on the application of the Section 1404(a) tests at all. To return to CAP's overall presentation in its Memorandum, its manifold deficiencies might well be viewed as raising Rule 11 concerns. But it may rather be that CAP's counsel can do the first part of research—finding cases—but not the second—applying them. That possibility is at least preferable to the far more unlikely alternative of intended misstatements of law. In part for that reason (even though the Rule 11 standard is objective, not subjective), no Rule 11 inquiry will be launched.

**9.** That number reflects the size of the court after full implementation of the Bankruptcy Amendments and Federal Judgeship Act of 1984 § 202(e), Pub.L. No. 98–353. Even at the court's prior authorized complement of 17, the chance of this case (after transfer) drawing the District Judge who decided *Hokama* was about 6%.

**10.** CAP Mem. 11 disingenuously suggests the *Hokama* court deliberately refused to follow a decision of its own Court of Appeals that had rejected the requirement of a nexus to organized crime in RICO cases. In fact the *Hokama* court accurately said (566 F.Supp. at 643) the cited case, *United States v. Campanale,* 518 F.2d 352, 363 (9th Cir.1975), *cert. denied sub nom. Arthur Andersen & Co. v. Schacht,* — U.S. —, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983), had dealt only with *criminal* RICO and not with whether the "nexus" concept applies in *civil* RICO actions. CAP Mem. 11 does however accurately report some of the numerous cases going the other way.

claim without the benefit of argument, and

(b) render an advisory opinion as to another court's hypothetical disposition of the same claim.

Article III constraints, as well as other jurisprudential considerations, compel rejection of that proposal.

3. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) held a Section 1404(a) transfer should not trigger a change in the applicable substantive law.[11] As the Court said (*id.* at 635–37, 84 S.Ct. at 818–19, footnotes omitted):

The legislative history of § 1404(a) certainly does not justify the rather startling conclusion that one might "get a change of law as a bonus for a change of venue." Indeed, an interpretation accepting such a rule would go far to frustrate the remedial purposes of § 1404(a). If a change of law were in the offing, the parties might well regard the section primarily as a forum-shopping instrument. And, more importantly, courts would at least be reluctant to grant transfers, despite considerations of convenience, if to do so might conceivably prejudice the claim of a plaintiff who had initially selected a permissible forum. We believe, therefore, that both the history and purposes of § 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms.

Though *Van Dusen* addressed the question in the context of a diversity case (and thus made the choice between potentially applicable state laws), it is a neat question whether the same reasoning would govern a federal-question claim, so as to carry with the case the transferor court's law on that subject. Given the overwhelming balance in favor of transfer in this case, that potential question (and all others) will be left to the transferee court.[12]

### Conclusion

This Court's observation in the Opinion, 594 F.Supp. at 351 bears repeating:

Any business person—indeed anyone other than lawyers trained in spinning out the legal fictions that dominate so much of legal "reasoning"—would unquestionably view this as a California case. Defendants' asserted Illinois contacts allegedly resulted only from their desire to preserve the ill-gotten gains they had already appropriated. And if in fact defendants did not loot Genesis, but only presided over a failed business, it is even more anomalous they would have to defend this action in Illinois.

CAP's choice of an Illinois forum is heavily outweighed by the location of the majority of the key witnesses and key documents in California. Defendants' Section 1404(a)

---

11. Here too CAP's counsel did their homework in locating a case (they cited and discussed *Van Dusen* at Mem. 13–14), then proceeded to misstate its significance: They said (Mem. 13) the Court "appl[ied] the common law doctrine of forum non conveniens," when the first sentence of Justice Goldberg's opinion for a unanimous Court made just the opposite plain (376 U.S. at 613, 84 S.Ct. at 807):

This case involves the construction and application of § 1404(a) of the Judicial Code of 1948.

Indeed the entire gravamen of the opinion was the difference in operative rules occasioned by the new concept of transfer under Section 1404(a) instead of the dismissals forced by the forum non conveniens rule.

12. CAP Mem. 13–14 does discuss the dictum in a pre-*Van Dusen* case, *H.L. Green Co. v. MacMahon,* 312 F.2d 650, 652 (2d Cir.1962), *cert. denied,* 372 U.S. 928, 83 S.Ct. 876, 372 U.S. 928 (1963), suggesting the choice-of-law rule might be different in a federal-question situation: However, the post-*Green* definitive announcement of principle in *Van Dusen* at least requires a fresh look at the issue. And on the precise argument now advanced by CAP, *Green* did say (312 F.2d at 652):

A plaintiff may not resist the transfer of his action to another district court on the ground that the transferee court will or may interpret federal law in a manner less favorable to him.

motion to transfer to the Central District of California is therefore granted.