Oscar Armando Sastre GAY, Teresita Colon Resto, and the conjugal partnership formed between them, Plaintiffs,

v.

AVCO FINANCIAL SERVICES, INC., Defendant.

Civ. No. 90–1246 (JAF).

United States District Court, D. Puerto Rico.

July 12, 1991.

Vicente J. Zayas–Plaza, Moreda & More-
da, San Juan, P.R., for plaintiffs.

Graciela J. Belaval, Martinez Odell Cal-
abria & Sierra, San Juan, P.R., for defen-
dant.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff Oscar Armando Sastre Gay was
dismissed from his employment on June 30,
1989, at age sixty-one (61). He claims that
the action was taken against him on the
basis of his age in violation of Puerto
Rico's anti-discrimination statute. Two is-
sues are currently before us. First, plain-
tiff wishes to amend his complaint to in-
clude a cause of action under the Federal
Age Discrimination in Employment Act.
Defendant counters that plaintiff has not
yet exhausted his administrative remedies
and that it is now too late for him to do so.
Second, defendant AVCO argues that plain-
tiff has failed to join a necessary party or
parties whose joinder would defeat diversi-
ty. Defendant, a Delaware corporation
with a primary place of business in Califor-
nia, argues that its subsidiaries in Puerto
Rico, all Puerto Rico corporations, are nec-
essary parties to this action since any judg-
ment in plaintiff's favor would necessarily
affect the local corporations.

### Amendment of Complaint

Plaintiffs seek leave of this court to
amend their complaint to include a cause of
action under the ADEA, 29 U.S.C. §§ 621,
623. "To maintain a private action under
the ADEA scheme, an aggrieved party
must first file a complaint with the EEOC
[Equal Employment Opportunity Commis-
sion]." *Kale v. Combined Insurance
Company*, 861 F.2d 746 (1st Cir.1988). It
is not sufficient that the party file a claim
with a state agency dedicated to redressing
discrimination, and no such filing can satis-
fy the requirement of filing with the *feder-
al* agency. *Powers v. Grinnell Corp.*, 915
F.2d 34 (1st Cir.1990); *Jay v. Internation-
al Salt Co.*, 694 F.Supp. 207 (W.D.La.1988);
*Burdette v. Mepco/Electra, Inc.*, 673
F.Supp. 1012, 15 (S.D.Cal.1987); *Hall v.
Ametek, Inc.*, 668 F.Supp. 417 (E.D.Pa.
1987). Plaintiffs in the case before us filed
only with the Puerto Rico Department of
Labor and Human Resources, alleging the
Puerto Rico anti-discrimination statute, 29
L.P.R.A. § 146. Therefore, unless there is
some procedure now for plaintiffs to file a
timely claim with the EEOC, they cannot
proceed with their claims before us. We
will show that even under the most gener-
ous view of the matter, plaintiffs' ADEA
filing is hopelessly untimely, beyond even
the repair of equitable tolling.

We will assume for the sake of this opinion that Puerto Rico is what is known as a "deferral state" for purposes of the ADEA. A deferral state is one in which there exists both a law prohibiting age discrimination and a state authority available to grant or seek relief from such discrimination. 29 U.S.C. § 633. *But see, Rodríguez Calderón v. Banco Santander–Puerto Rico,* 671 F.Supp. 898 (D.P.R.1987) (assuming that Puerto Rico is *not* a deferral state where it was not a matter at issue); *Lugo Garces v. Sagner International, Inc.,* 534 F.2d 987 (1st Cir.1976) (case decided prior to time state agency took on role of anti-discrimination investigation held that Puerto Rico was *not* a deferral state). We assume Puerto Rico is a deferral state because the filing deadline is more generous in a deferral state than in a non-deferral state, and we are examining the timeliness in the light most favorable to plaintiffs.

Under the deferral state scenario, plaintiffs are required to take their claim in the first instance to the relevant state agency. *Powers v. Grinnell Corp.,* 915 F.2d 34, 38 (1st Cir.1990). Sixty days later, if the state has not terminated its investigation sooner, plaintiffs may then file with the EEOC. 29 U.S.C. § 633. The filing with the EEOC must take place within 300 days of the alleged discriminatory act. 29 U.S.C. § 626(d). The timeliness of the filing with the EEOC is a statute of limitations, not a jurisdictional prerequisite to suit. *Kale v. Combined Insurance Co.,* 861 F.2d 746, 752 (1st Cir.1988). As such, it is subject to equitable modification such as equitable estoppel and equitable tolling. *Id.; Hall,* 668 F.Supp. at 419. A standard reason for applying the doctrine of equitable tolling has been the employer's failure to fulfill the statutory duty to post EEOC notices in the workplace advising potential claimants of their rights under the discrimination laws, which resulted in the claimant's ignorance of his or her rights. *Kale, Hall, supra; Berry v. Joseph E. Seagram & Sons, Inc.,* 744 F.Supp. 214 (C.D.Cal.1990). The tolling ends, however, at the time that the claimant acquires actual knowledge of the fact that there is a statute outlawing age discrimination, *Kale,* 861 F.2d at 753, *Berry,* 744 F.Supp. at 217, or when he or she retains an attorney, at which time constructive knowledge of ADEA rights will be "attributed" to the claimant. *Kale,* 861 F.2d at 753.

In the case at bar, the last date a discriminatory act is alleged to have taken place was June 30, 1987, when plaintiff Oscar Armando Sastre Gay was dismissed. Plaintiff filed with the state agency on November 23, 1987. Therefore, on or after January 22, 1988, sixty days after the filing with the state, plaintiff could have filed with the EEOC. The deadline for filing with the EEOC was April 26, 1988, three-hundred days after the discriminatory act. Assuming, however, that a case for equitable tolling could be made (we note that plaintiffs provide us with no such facts), such tolling would, at the outside limit, run until plaintiffs obtained counsel for the instant suit. This matter was filed on February 16, 1990. Even if we assume that plaintiffs retained counsel on the very day the suit was filed, the tolling period would end on February 16, 1990, at which time knowledge of rights under the act must be imputed to the plaintiffs. Three-hundred days from February 16, 1990 takes us to December 14, 1990.

If plaintiffs' attorneys had counseled plaintiffs to file with the EEOC at any time within the three-hundred day period following the filing of this suit, (any time on or before December 14, 1990), they might now have had a tolling argument which we could recognize as sufficient to excuse an otherwise late filing, but at this point there is no way in which plaintiffs can cure the deficiency. We see no reason to allow plaintiffs to amend their complaint to include an ADEA claim only to then have the matter dismissed.

Plaintiffs argue that the Age Discrimination Claims Assistance Act of 1990, Public Law 101–504, § 2, Nov. 3, 1990, 104 Stat. 1298, somehow saves their action. 29 U.S.C. § 626 (Note). It does not. That amendment only extended the court filing

deadline for claims which had been timely filed with the federal EEOC, where the federal EEOC failed to process the claim past the court filing deadline. It has no applicability to any claimant who did not file with the EEOC. It does not extend the EEOC filing deadline. Plaintiffs argue that the amendment applies to them since the state agency sat on their claim and did not act until August 1, 1989. First, the amendment is very specific as to whom it applies, and state filers are not included. Second, plaintiffs did not have to wait until the state agency had completed its investigation. They had only to wait sixty days from filing his state claim, at which time they were entitled to file with the EEOC and thereby fulfill the requirement.

Plaintiffs' motion for leave to amend the complaint is denied.

### Failure to Join Necessary Party Whose Joinder Would Be Fatal to Diversity

■ Defendant alleges that at least one Puerto Rico corporation, one of its wholly-owned subsidiaries, is an indispensable party under Rule 19, but whose joinder will defeat diversity. We start by examining the corporate structure involved in this case.

A total of five AVCO corporations operated in Puerto Rico at the time of the actions relevant to this suit, three of them Puerto Rico corporations and two foreign corporations. AVCO Financial Services Inc., the defendant, is a Delaware Corporation with a principal place of business in California (hereinafter, "AVCO Delaware"). AVCO Delaware is authorized to do business in Puerto Rico and in fact operates several branch offices in Puerto Rico. AVCO Delaware is also the ultimate parent corporation for the other four AVCO corporations operating in Puerto Rico. The other foreign corporation, (a subsidiary of AVCO Delaware), is AVCO Financial Services of Puerto Rico, Inc. (also a Delaware corporation). AVCO Delaware's three wholly-owned subsidiaries operating in Puerto Rico are three Puerto Rico corporations, AVCO Financial Servic-

es of San Juan ("AVCO San Juan"), AVCO Financial Services of San Sebastián, Inc. ("AVCO San Sebastián"), and AVCO Financial Services of Santurce, Inc. ("AVCO Santurce"). All five corporations operating in Puerto Rico are controlled by a central office located in San Juan. Employment decisions are made by persons employed in the San Juan central office, in conjunction with and with the consultation of the AVCO Caribbean and Gulf regional office in Florida. (Although it is not stated, it appears clear from context that the Florida office is a unit of the defendant, and actions taken by the Florida office are directly attributable to AVCO Delaware). AVCO Delaware pays the salaries of the employees at its subsidiary corporations directly.

Until November of 1985, plaintiff Oscar Armando Sastre Gay was employed at Metro Finance Co., a small financial services corporation operating in Puerto Rico. In November of 1985, all of Metro's stock was sold to AVCO Delaware. Plaintiffs claim that AVCO Delaware became the formal successor to Metro, and therefore became plaintiff's formal employer after the sale. Defendant claims that although it purchased the stock of Metro, it exercised a right that it had to designate another entity as the actual purchaser, which it did, designating AVCO San Lorenzo. AVCO San Lorenzo later merged into AVCO San Juan. Therefore, defendant claims that a non-joined, non-diverse Puerto Rico corporation, (AVCO San Lorenzo, which became AVCO San Juan), became the successor to Metro.

We agree with defendant that the factual dispute about who formally held the Metro stock after the sale is largely irrelevant. What is important is that plaintiff was kept on to provide services for the Puerto Rico corporations which made up the AVCO group. Defendant denies that plaintiff ever provided services directly for the San Juan branches of AVCO Delaware, and plaintiff does not dispute that fact.

The decisions complained of here, first to demote plaintiff and then to fire him, were taken by Joe Ramos. Ramos worked in the San Juan headquarters office from which

all five Puerto Rico AVCO corporations were run. It appears that Ramos did not work only for the Puerto Rico corporations in San Juan, but provided services to both the Puerto Rico and foreign corporations. The decision was made after consultation with the Caribbean Gulf Office in Florida.

Defendant argues that the San Juan subsidiary corporations for whom plaintiff provided services are necessary parties to this action.

Defendant's first argument is that the Puerto Rico corporations are necessary parties since plaintiff seeks reinstatement, relief which would directly affect those corporations in their actual day-to-day operations. While legally correct, defendant's argument starts from a factually erroneous premise. A careful review of the complaint reveals that plaintiff is *not* seeking reinstatement, but only damages. Case law in which equitable relief was sought against a subsidiary corporation is inapposite. Instead we look to law in our circuit on pure damages cases.

In *López v. Shearson American Express, Inc.*, 684 F.Supp. 1144 (D.P.R.1988), this court faced a situation similar to the one currently presented. López was employed by Shearson Puerto Rico, a Puerto Rico corporation which was a wholly-owned subsidiary of Shearson American Express, Inc., a Delaware corporation. Sometime in the mid–1980's the president of Shearson Puerto Rico, one Francisco Pujol, began to blow the whistle on illegal and unethical dealings by Shearson Puerto Rico employees. Shearson Delaware struck back, firing Pujol, accusing him of wrongdoing, and bringing actions against him. López and other employees at the Puerto Rico office were encouraged by employees at Shearson Delaware and Shearson Puerto Rico to stay on, were told that the reports of illegality in the Puerto Rico operation were false, and were generally induced to keep servicing their clients from Shearson Puerto Rico. López eventually sued on various contract and harm-to-reputation theories, alleging that the damage control campaign was just a coverup. Shearson Delaware sought to have the matter dismissed on the theory that Shearson Puerto Rico was a necessary party to the action.

We agreed with Shearson Delaware. In determining whether Shearson Puerto Rico was a necessary party under Rule 19(a), we emphasized the fact that most of the complaint alleged wrongdoing by the subsidiary itself. We relied heavily on the fact that the complaint "allege[d] numerous instances of wrongdoing on the part of Shearson (Puerto Rico) or its officers and/or employees. These allegations indicate that Shearson (Puerto Rico) was, if not a primary participant, at least a very active participant in the events between 1982 and 1984 that gave rise to López' resignation and the filing of the complaint. The law appears very clear that where the subsidiary is the primary participant in a dispute involving both the parent and the subsidiary, the subsidiary is an indispensable party." *López*, 684 F.Supp. at 1147. In looking at the Rule 19(b) factors to determine whether the action could proceed in the absence of Shearson Puerto Rico, we found that Shearson Puerto Rico risked substantial prejudice if the suit proceeded without it since numerous allegations were aimed directly at it, that it appeared that the bulk of the facts to be proven in the suit would be acts taken by the subsidiary, that the strong possibility of multiple litigation existed, and that there was an adequate forum in the local courts.

Were we to use only our decision in *López* as precedent, we would not hesitate in dismissing the matter before us. But subsequent First Circuit precedent arising out of the same Shearson situation requires us to consider the matter more closely. The president of Shearson Puerto Rico, Pujol himself, and his wife, sued the parent for the various acts of retaliation which were taken against him on account of his whistleblowing. *Pujol v. Shearson American Express, Inc.*, 877 F.2d 132 (1st Cir. 1989). Shearson Delaware moved to dismiss the wife's action for failure to join Shearson Puerto Rico. The Court of Appeals held that Shearson Puerto Rico was not only not an indispensable party under Rule 19(b), it was not even a necessary party under Rule 19(a). The Court of Ap-

peals allowed the matter to proceed in the absence of the local subsidiary. The Circuit found that although the *Pujol* plaintiff was going to adduce evidence of wrongdoing at the subsidiary, the subsidiary's interests would be adequately protected by the defense that the parent would present. The court emphasized that the parent and the subsidiaries' interests were identical. The court found that Shearson Puerto Rico could suffer no prejudice since Shearson Delaware would be endeavoring to clear Shearson Puerto Rico's name in any event as part of its (Shearson Delaware's) defense strategy.

We see a solid distinction between *Pujol* and *López*. In *López*, the plaintiff alleged wrongdoing at least partially by the subsidiary itself as the basis for recovery in the action. In other words, López alleged that the subsidiary itself took actions which gave rise to liability to López, in that the subsidiary helped to effect the fraudulent coverup. The ultimate factual issues to be proven in the case were, at least partially, the wrongdoing of the subsidiary. In *Pujol*, the plaintiff had a very different tact. In *Pujol* the ultimate issue of wrongdoing concerned only the retaliation by the parent office. The facts to be proven regarding wrongdoing and illegality at the subsidiary (the facts about which Pujol had whistleblown) were to be brought out only as evidence supporting the theory that the parent's acts against Pujol were pure retaliation. In other words, in *Pujol*, the ultimate wrong to be proven (retaliation) was a wrong alleged against only the parent. The fact that in proving that ultimate issue the plaintiff would produce evidence of wrongdoings of a third party (the subsidiary) was not enough, for the Circuit, to necessitate that third party's presence in the case. As the Circuit pointed out, nonparties to lawsuits are frequently the target of accusations and allegations by parties, a situation which does not, by itself, require joinder of that party.

We believe that *Pujol* stands for the proposition that the subsidiary is not a necessary party where the facts to be proven "against" the subsidiary are not the ultimate facts needed to make the plaintiff's case, but are merely ancillary proof of the case which lies against the parent. We cannot read *Pujol* so broadly as to find that the interests of a wholly owned subsidiary are *by definition* aligned with the parent, or that the defense by the parent's lawyers can inherently be said to be adequate to protect the subsidiary's interest, since such a rule would effectively eliminate *all* subsidiary corporations from diversity calculus, a result that the *Pujol* court itself did not accept. ("It is true that the Subsidiary's 'corporate alter ego' statute does not, *by itself,* mean that the Subsidiary falls outside Rule 19(a)." *Pujol,* 877 F.2d at 135).

We think that the case at hand does not fall into the *Pujol* category, but is rather more like *López*. The ultimate issue in the case is the question of discriminatory practice. Plaintiff has brought the case against the parent only, but the facts show the strong probability that the allegedly discriminatory decisions were taken by employees of the local office as an aspect of local policy. The case is not, as it was in *Pujol*, a case primarily against the parent. It is not a situation where the evidence to be introduced which would be harmful to the subsidiary is only tangential to the ultimate issue before the court. More like *López*, it is a case directed at actors in the local arena who acted primarily alone, with only the cooperation and advice of the parent. In *Pujol* the court characterized the local subsidiary as a mere "slandered outsider" to the main suit. *Pujol,* 877 F.2d at 136. That term would surely not be suitable to describe the Puerto Rico corporations in the suit before us. They are simply not "outsiders" at all, slandered or otherwise. Instead, they appear to be major participants in the activity that gave rise to the suit. Where the subsidiary is an active participant in the activity alleged as the basis for recovery, the subsidiary should be a party to the action. *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553 (5th Cir.1985).

We believe that in the spirit of the pragmatism and practicality which is supposed to inform Rule 19 decisions, *Pujol,* 877

F.2d at 134, the matter before us should not proceed in the absence of some form of direct representation for the Puerto Rico corporations involved here.[1] We cannot see that the appearance of only AVCO Delaware can adequately protect the interests of and avoid prejudice to the Puerto Rico corporations which were directly responsible for the employment of plaintiff and his eventual demise. We see the real danger that the parent may shield itself before us by shifting the fault to the subsidiary and garner a favorable judgment for itself in that way. In a later action against the subsidiary, the subsidiaries' best defense, that it was the parent who acted wrongly, will be precluded. We see the likelihood of multiple litigation, and of factfinding hamstringed by the absence of centrally implicated actors in the drama. Finally, we see no reason why the local court would not be an adequate forum for this action, since the parent corporation is surely amenable to suit in the local courts on the basis of its activities here.

### Conclusion

1.  Plaintiff's motion to amend his complaint is DENIED.

2.  Defendant's motion to dismiss the Puerto Rico law causes of action is GRANTED because non-diverse parties who have not been joined are indispensable parties, without whom the court cannot proceed in equity or good conscience.

IT IS SO ORDERED.

---

1.  We need not decide whether the appearance of AVCO San Juan alone would bring all necessary parties before the court, or whether all the Puerto Rico corporations need be present. It is sufficient for us to find that having *none* of them present is not acceptable.