896 F.Supp. 786 (1995)
NORTH SHORE GAS COMPANY, Plaintiff,
v.
SALOMON, INC., Defendant.
No. 94 C 7250.
United States District Court, N.D. Illinois.
August 22, 1995.
*787 James H. Schink, Lise Taylor Spacapan, Diane Katharyne Moore, Kevin H. Rhodes, Kirkland & Ellis, Chicago, IL, for plaintiff.
Richard John Kissel, Mary Beth Cyze, Roberta M. Saielli, Gardner, Carton & Douglas, Chicago, IL, Laurence A. Silverman, Robert M. Hallman, Cahill, Gordon & Reindel, New York City, for defendant.

MEMORANDUM OPINION AND ORDER
GETTLEMAN, District Judge.
Plaintiff, North Shore Gas Company brings this action against defendant Salomon, Inc. pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, seeking a determination that it is not liable to defendant under CERCLA for response costs incurred and to be incurred in connection with remediating contamination from releases of hazardous substances at 1805 South Bannock Street, Denver, Colorado (the "Site"). This court has subject matter jurisdiction over this action pursuant to CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b). Defendant has moved the court to: (1) decline to exercise jurisdiction over this case pursuant to 28 U.S.C. § 2201; (2) dismiss plaintiff's action pursuant to Fed.R.Civ.P. 12(b)(7) and 19, for failure to join an indispensable party; or, in the alternative, (3) transfer venue of this action to the District Court for the District of Colorado, pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the court denies defendant's motion to dismiss and its motion to transfer.

Background
In 1983, the Site was included on the National Priorities List because both radioactive and nonradioactive hazardous substances were found there. In 1992, the United States Environmental Protection Agency found that the S.W. Shattuck Chemical Company, Inc. ("Shattuck") was responsible for cleaning-up the Site, and issued a CERCLA Section 106 Order (the "Order") compelling *788 Shattuck to remediate the property.[1] Shattuck is a wholly owned subsidiary of defendant. In a guarantee dated September 1, 1993, defendant provided financial assurance for the performance of the remediation costs Shattuck will incur at the Site.
John Faught ("Faught"), on behalf of Shattuck, sent plaintiff a letter dated January 31, 1994 (the "Faught Letter"), demanding reimbursement, indemnification, and contribution for Shattuck's CERCLA response costs. In the letter, Faught asserts that plaintiff is liable for the clean-up costs under a 1941 Plan of Reorganization (the "1941 Plan") that is filed with the Securities and Exchange Commission. Pursuant to the 1941 Plan, defendant alleges that plaintiff is the successor corporation to North Shore Coke. North Shore Coke allegedly owned and/or operated the Bannock Street Site at a time when hazardous substances were disposed of on the site. Within the demand letter, Faught quotes full paragraphs from the 1941 Plan. The Faught Letter also explains that Shattuck is a wholly owned subsidiary of Salomon, and that defendant has provided financial assurance for the remediation.
After receiving the demand letter, plaintiff agreed to meet with Faught and defendant to discuss the issues raised in the Faught Letter. On April 27, 1994 and November 2, 1994, plaintiff met with Faught, Arnold Olshin, defendant's Corporate Secretary and in-house environmental law attorney, and Robert Oliver, Shattuck's Executive Vice President. While the parties dispute some of what occurred at these meetings, they agree that: (1) the parties did not resolve their dispute; (2) at the end of the November 2nd meeting there was no discussion of a date for further settlement talks; and, (3) plaintiff was told that if it did not agree to share in the clean-up costs it would be sued for contribution.
On December 5, 1994, plaintiff filed the instant declaratory judgment action asking this court to declare whether plaintiff is liable to defendant under CERCLA for response costs incurred and to be incurred, or any other damages in connection with the Site.

Declaratory Judgment Act
Defendant asserts that this court should exercise its discretion and decline to hear plaintiff's declaratory judgment action. In assessing this request the court must determine "whether a declaratory judgment will settle the particular controversy and clarify the legal relations in issue." Nucor v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 579 (7th Cir.1994); Tempco Electric Heater Corporation v. Omega Engineering, Inc., 819 F.2d 746, 749 (7th Cir.1987) (declaratory judgments can also be used to "terminate and afford [a plaintiff] relief from the uncertainty, insecurity, and controversy" that gave rise to the action).
Plaintiff asserts that defendant threatened to sue plaintiff for contribution if it did not concede liability for remediation costs incurred at the Site.[2] Defendant asserts that plaintiff is liable for contribution of the Site's cleanup costs pursuant to what plaintiff acquired, assumed or succeeded to under the 1941 Plan. Plaintiff's action to interpret the 1941 Plan will settle the controversy of whether plaintiff is a successor to North Shore Coke, or whether plaintiff assumed the liability for the Site's contamination. The court's findings will clarify plaintiff's legal responsibilities (if any) to contribute to defendant's response liability.
Defendant asserts that plaintiff's declaratory judgment action should be dismissed *789 because the only reason it was filed was to get a "jump" on litigation plaintiff knew would be filed against it by Shattuck in Colorado. The Seventh Circuit has noted that, "[t]he wholesome purpose of declaratory [actions] would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." Tempco, 819 F.2d at 750. Further, courts encourage settlement discussions and will not "countenance" the use of declaratory judgment suits that "torpedo" those discussions. Inland Steel Company v. Van Leer Containers, Inc., 1990 WL 77994 (N.D.Ill.1990) (potential plaintiffs should be encouraged to attempt settlement discussions prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to choose the forum).
Defendant alleges that following the settlement discussions on April 27 and November 2, a third settlement meeting was scheduled for December 19, 1994, the day after the instant complaint was filed. Further, defendant asserts that the court should infer that because this suit was filed just over a month after meeting with Shattuck, it was brought in anticipation of an action that plaintiff expected would be filed in Colorado by Shattuck. In an affidavit, plaintiff's attorney stated that at the end of the second settlement meeting on November 2, 1994, Arnold Olshin (Salomon's attorney) told him that litigation was unavoidable but did not say what company (Salomon, Shattuck, or both companies) would sue, when the suit would be filed, or where the suit would be filed. Defendant does not refute these statements.[3] Defendant's affiants support plaintiff's position that settlement talks had come to an impasse.[4]
Plaintiff asserts that it was not trying to win a race to the courthouse or that it believed defendant would file any suit for contribution for the Site.[5] Rather than racing to the courthouse after receiving the demand letter in January 1994, plaintiff's representatives attended two settlement conferences, and analyzed defendant's claim. It was only after the settlement discussions came to an impasse that, rather than wait an indefinite time to be sued, plaintiff filed the instant action.
Based on the evidence before it, the court finds that plaintiff has not improperly "raced" defendant to the courthouse in an attempt to usurp defendant's right to choose a forum. After eleven months of unsuccessful settlement talks with no evidence of any further negotiations, the court finds that plaintiff's actions are distinguishable from the cases defendant cites where the court has declined declaratory judgment jurisdiction.[6] Further, the court finds that the instant declaratory judgment action will afford both parties relief from the uncertainty, insecurity, and controversy of whether plaintiff is *790 liable under CERCLA pursuant to the 1941 Plan.
Defendant also argues that plaintiff's action should be dismissed pursuant to Rule 19 because plaintiff has failed to join Shattuck, an indispensable party. The purpose of Rule 19 is to allow the joinder of all materially interested parties "so as to protect interested parties and avoid waste of judicial resources." Moore v. Ashland Oil, Inc., 901 F.2d 1445, 1446 (7th Cir.1990). Rule 19 prescribes a two part test to determine whether an action must be dismissed if an interested party cannot be joined: first, the court must determine whether the party is a "person to be joined if feasible"; if the court finds that the party meets this test, the court must then determine whether the case can proceed in the absence of that party. Moore, 901 F.2d at 1447; Fed.R.Civ.P. 19. Under the first part of the test, the court must assess whether complete relief can be granted in the party's absence or if the party claiming an interest to the action is "so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Rule 19(a).
Defendant argues that because Shattuck is the party named in the Order and is liable for clean-up costs at the Site, it is a party to be joined if feasible under Rule 19(a). Plaintiff argues that Shattuck's purported interest in this action is "illusory" because it ceased business operations eleven years ago, is bereft of any funds, and defendant has assumed financial responsibility for remediation of the Site. In his affidavit, defendant's corporate secretary and in house counsel concedes that Shattuck has not conducted commercial operations since 1986 and has virtually no funds of its own. Defendant argues that regardless of this fact, Shattuck's interest is relevant because it is the party named in the Order.
When applying Rule 19(a), the court must decide "whether considerations of efficiency and fairness, growing out of the particular circumstances of the case, require that [Shattuck] be joined as a party." Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 134 (1st Cir.1989). In Pujol, the court held that a wholly owned subsidiary was not a party that should be joined "if feasible" under Rule 19(a) in an action against its parent because the subsidiary's interests in the case were virtually identical to the parent's, and the parent's counsel's "motives and ability to defend [the subsidiary] do not differ significantly, as a practical matter from [the parent's] counsel's motives and ability to defend the Subsidiary's interests as well." 877 F.2d at 135.
In the instant case, defendant has virtually identical interests in the case as Shattuck, and has the same if not greater motive and ability to defend its own as well as Shattuck's interests. Plaintiff's alleged liability depends on an interpretation of what assets and liabilities plaintiff acquired or succeeded to under the 1941 reorganization Plan. This does not involve any direct activity between Shattuck and plaintiff, or defendant and plaintiff.
The cases defendant cites are distinguishable from the instant case because they addressed claims that involved the subsidiary's actions. Dou Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc., 149 F.R.D. 185, 188 (D.Minn.1993) (the subsidiary was the primary participant in the activity alleged as the basis for recovery); Freeman v. Northwest Acceptance Corp., 754 F.2d 553, 559-60 (5th Cir.1985) (the defendant corporation's subsidiary is an indispensable party when it is an "active participant" in the conduct complained of by the plaintiffs); Gay v. AVCO Fin. Serv. Inc., 769 F.Supp. 51, 56 (D.P.R. 1991) (subsidiary was an indispensable party in a case stemming from events in which the subsidiary "acted primarily alone, with only the cooperation and advice of the parent").
In Dou Yee, the subsidiary was a participant in an alleged fraudulent scheme and had performed on behalf of its parent corporation's agreement with the plaintiff. Id. Further, the court held that given the location of the subsidiary in Singapore and its parent in the United States, and the facts of the case, there was evidence that the parent could not *791 adequately protect the subsidiary's interests. Id., 149 F.R.D. at 189.
This is not the situation in the instant case. Plaintiff's action is not based on any scheme or course of events performed by defendant or Shattuck. Further, defendant has the motive and ability to defend Shattuck's interests: defendant has provided the financial assurance for the performance of the remediation at the Site, and actively participated in the settlement meetings. The court finds that Shattuck's interests are virtually identical to defendant's, and defendant has the incentive and ability to litigate for its own as well as Shattuck's interests. Therefore, the court holds that Shattuck is not an indispensable party under Rule 19(a). Accordingly, the court denies defendant's motion to dismiss.

Motion To Transfer
Defendants have moved to transfer venue under 28 U.S.C. Section 1404(a). The Court may transfer a civil action to another district when the moving party demonstrates that venue is proper in the transferor district, venue and jurisdiction are proper in the transferee district, and the transfer is for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a); Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir., 1986). The weight to be accorded each of these factors is left to the sound discretion of the court. Id. The first two factors are not at issue in this case. The parties concede that venue is proper in this court and that plaintiff could have brought this action in Colorado.[7]
In determining whether to transfer venue, the Court seeks to promote the efficient administration of justice and not merely the private interests of the parties. Black v. Mitsubishi Motors Credit of America, Inc., 1994 WL 424112, *2 (N.D.Ill., 1994). Accordingly, venue may not be transferred simply to shift inconvenience from the defendant to the plaintiff. Id. The private interests that may warrant a transfer of venue include: plaintiff's initial choice of forum; the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses, and the costs of obtaining the attendance of witnesses; and, the situs of material events. Genden v. Merrill Lynch, Pierce, Fenner & Smith, 621 F.Supp. 780, 782 (N.D.Ill., 1985); Club Assistance Program, Inc. v. Zukerman, 598 F.Supp. 734, 736-37 (N.D.Ill., 1984).
While plaintiff argues that its choice of forum should be afforded substantial deference, it is "simply one factor among many to be considered." Club Assistance Program, 598 F.Supp. at 736. As to the second element named above, defendant argues that all of the evidence and witnesses are located in Colorado. The witnesses defendant identified would offer testimony concerning the relationship between North Shore Coke and North Continent Mines. This testimony is not relevant to the instant action.
The sole issue in this case is whether plaintiff succeeded to or acquired the liabilities of North Shore Coke. Plaintiff's relationship to North Shore Coke and North Continent Mines is premised on what it acquired or succeeded to under the 1941 Plan. The documents necessary to resolve this issue are located in Illinois. Based on these facts, there is no evidence that it would be more convenient for purposes of witnesses or evidence to transfer the instant case to Colorado.
Defendant argues that the situs of the material events is Colorado. That is where the contamination allegedly occurred and the remediation is taking place. Plaintiff argues that while the damages were incurred in Colorado, the alleged basis for its liability rests in Illinois. Where the nature of the claim involves separate determinations of liability and damages and each significantly *792 connects the case to different forums there is no single situs where the litigation should take place. Sistrunk v. Archer-Daniels-Midland Co., 1993 WL 98239, *2 (N.D.Ill. 1993).
The public interests of justice that may warrant transfer include: relation of the community to the occurrence at issue in the litigation; the congestion of the respective court dockets; and prospects for an earlier trial. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); Hughes v. Cargill, Inc., 1994 WL 142994, *2 (N.D.Ill.1994). The administration of justice will be served more efficiently when the action is brought before a court that is "closer to the action." Paul v. Land's End, Inc., 742 F.Supp. 512, 514 (N.D.Ill. 1990).
Defendant argues that the state of Colorado has a more compelling interest in the resolution of this matter than does Illinois because the Site and the remediation is in Colorado. However, at this time defendant has already provided the Region VIII, United States Environmental Protection Agency in Denver, Colorado, financial assurance for the remediation costs. This obligation will thus be satisfied regardless of whether plaintiff is found liable for contribution.
Plaintiff argues that Illinois bears a more significant relation to the occurrence at issue in the litigation because the issue is the interpretation of the 1941 Plan. It is uncontested that the 1941 Plan was between Illinois companies, and the asset purchase was negotiated and consummated in Illinois.[8] Because the source of the damage is located in Colorado and the basis on which plaintiff's alleged liability rests is located in Illinois, the court finds that both Colorado and Illinois have interests in this litigation.
Defendant has attached to its supplemental reply brief a copy of the complaint that the United States has filed in the United States District Court for the District of Colorado against Shattuck pursuant to CERCLA to recover response costs for clean up of the Site. Further, there is ongoing litigation between the Environmental Protection Agency and the City of Denver to resolve the appropriate method of remediation at the site. Defendant asserts that the ongoing Site remediation litigation in Colorado is a compelling reason to transfer this case to the District of Colorado in order to conserve judicial resources. The sole issue before this court at this time, however, is whether plaintiff is liable for contribution for the Site's remediation as a result of the 1941 Plan. That transaction occurred in Illinois and affects Illinois interests. The Colorado court is not familiar with the facts surrounding plaintiff's alleged liability that allegedly arises from conduct in Illinois, and therefore, transfer of this case to Colorado would not conserve judicial resources. Therefore, the court finds that the pendency of the Colorado action that may impact the cost of the Site's remediation does not compel the transfer of this case to Colorado.
Defendant asserts that transfer of the case would permit resolution of this case in a more expeditious manner. Defendant asserts that this district has a median time to trial of 23 months and 417 cases three years old and over, compared with the District of Colorado that has a median time to trial of 18 months and only 113 cases three years old and over.[9] Plaintiff argues that it believes this case will be resolved by summary declaratory judgment. Even if the parties might receive a more expeditious resolution in Colorado, this element alone does not warrant the transfer of this case under § 1404(a).
Under § 1404(a) defendant has the burden of demonstrating that the District of Colorado is "clearly more convenient" than the Northern District of Illinois. Heller Financial, Inc. v. Shop-A-Lot, Inc., 680 F.Supp. *793 292, 293 (N.D.Ill.1988). Based on the evidence before it, weighing all of the relevant § 1404(a) factors, the court finds that defendant has failed to meet its burden of proving that Colorado is a more convenient forum. Accordingly, the court denies defendant's motion to transfer this case to the District of Colorado.

Conclusion
For the reasons stated above, the court finds that plaintiff has not brought this declaratory judgment action for improper motives and that Shattuck is not an indispensable party under Rule 19. Accordingly, the court denies defendant's motion to decline declaratory judgment jurisdiction and its motion to dismiss. Further, the court finds that the public and private interests do not weigh in favor of transferring this case to the District of Colorado. Therefore, the court denies defendant's motion for transfer under § 1404(a). This case is set for a status before this court on August 24, 1995. The court instructs the parties to be prepared to discuss a plan for discovery and any dispositive motions at that time.
NOTES
[1] In its complaint, plaintiff alleges that the Order was issued against defendant. Defendant asserts that the Order was issued against Shattuck, not defendant and attached a copy of the Order to its memorandum. In its response to defendant's motion plaintiff does not dispute that Shattuck is the party named in the Order.
[2] Defendant argues that it is not a proper party to sue plaintiff because it is not the party named in the Order. This argument is disingenuous at best. Defendant concedes it has provided financial assurance and guaranteed payment of the clean-up costs. Based on its liability for the Site's clean up costs pursuant to the guarantee, defendant has the right under 42 U.S.C. § 9612(f)(1) to bring a civil action for contribution against plaintiff or any other person who is liable under CERCLA. 42 U.S.C. §§ 9601 et seq. Environmental Transportation Systems, Inc. v. ENSCO, Inc., 969 F.2d 503, 506 (7th Cir.1992).
[3] In his affidavit, Faught, Shattuck's attorney, states that, "Bob Oliver, Arnold Olshin and I" made it clear that absent an amicable resolution of Shattuck's claim against plaintiff, a suit would be forthcoming. Regarding the location of the threatened litigation, Faught states that because the location of the Site was in Denver, the governmental authorities who are in charge of the remediation are in Denver and Shattuck's office is in Denver, plaintiff "must have known" that any lawsuit brought would be brought in Denver. Based on the fact that there is a serious question whether Colorado has personal jurisdiction over plaintiff (plaintiff is an Illinois corporation that does not carry on any business in Colorado, does not have minimum contacts with Colorado and refutes any liability for the Site's remediation), it is unclear why plaintiff "would have known" that litigation was imminent in Colorado.
[4] While defendants allege in their briefs that a third settlement meeting was set, none of defendant's affiants testified that there was a settlement discussion set for December 19, 1994, or that any dates or future settlement meetings were scheduled after the November 2, 1994 meeting.
[5] As noted above, plaintiff also asserts that it is not subject to personal jurisdiction in Colorado.
[6] For example, in Inland Steel, 1990 WL 77994 (N.D.Ill.1990), the court found that an important consideration in declining to exercise its discretion over the declaratory judgment action was the fact that the plaintiff had filed suit the day before a third settlement meeting had been scheduled. In Tempco, 819 F.2d 746, court affirmed the district court's decision to decline to hear a declaratory judgment suit where the plaintiff filed the action in the Northern District of Illinois the same day it received a letter from the defendant that defendant was going to file an action and defendant filed its action, four days later in the District of Connecticut.
[7] Plaintiff argues that Colorado lacks personal jurisdiction over this action because plaintiff is an Illinois corporation without the necessary minimum contacts with Colorado. However, the requirement under § 1404(a) is met if venue is proper and if the defendant is subject to jurisdiction in the transferee district. Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. Partnership, 807 F.Supp. 470, 474 (N.D.Ill.1992). In the instant case plaintiff could have brought the case in Colorado and voluntarily subjected itself to the Colorado court's personal jurisdiction because defendant would be subject to the court's jurisdiction.
[8] While the issue has not been briefed, it appears from the facts before the court that the 1941 Plan will be interpreted under Illinois law. While this is not a determinative factor, it is one more element that weighs in plaintiff's favor to have this court retain jurisdiction over this case.
[9] The court notes that, according to a March 13, 1995, memorandum of the Clerk of the U.S. District Court for the District of Colorado (submitted by defendant), district judges for the District of Wyoming have been designated to assist judges in Colorado with their cases, including the government's suit against Shattuck.