709 F.2d 175
 19 ERC 1996
 SIERRA CLUB, et al., Plaintiffs-Appellees,
v.
UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants-Appellees.
City of New York, Defendant-Intervenor-Appellee.
Lawler, Matusky & Skelly Engineers, Applicant for
Intervention-Appellant.
 No. 1417, Docket 83-6093.
 United States Court of Appeals,
Second Circuit.
 Argued May 10, 1983.
Decided June 9, 1983.
 
 Jack S. Kannry, Berman, Paley, Goldstein & Berman, New York City, for applicant for intervention-appellant.
 Mitchell S. Bernard, New York City (Albert K. Butzel, Butzel & Kass, New York City, of counsel), for plaintiffs-appellees.
 Before OAKES, CARDAMONE, and PIERCE, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal is by the engineering firm of Lawler, Matusky & Skelly Engineers (LMS), consultants to the New York State Department of Transportation (NYSDOT), from an order of the United States District Court for the Southern District of New York, Thomas P. Griesa, Judge, denying the firm's motion for intervention of right under Fed.R.Civ.P. 24(a)(2) or permissive intervention under Fed.R.Civ.P. 24(b)(2). Intervention is sought in connection with a pending trial on a motion for civil contempt against NYSDOT and the United States Army Corps of Engineers by LMS, which performed a 1979-80 study related to Hudson River fisheries in connection with the Westway project for NYSDOT. Familiarity with this court's opinion in Sierra Club v. United States Army Corps of Engineers, 701 F.2d 1011 (2d Cir.1983), in which that study played a significant role, id. at 1022-24, 1030-35, 1044-49, is assumed. We affirm.
 
 
 2
 Under Fed.R.Civ.P. 24(a), intervention of right may be had when the applicant claims an "interest relating to the ... transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest" unless the applicant's interest is "adequately represented by" the existing parties. The contempt motion below was filed because allegedly the Corps' district engineer--despite this court's decision above mentioned and the district court's orders--accepted a proposal by NYSDOT to carry out through NYSDOT's contractor, LMS, less extensive studies than the federal fisheries agencies and the Corps' own biologists had urged. As explained to us in the LMS brief, NYSDOT has engaged LMS to conduct a "mitigation study" as of late 1982 under a contract valued to LMS in an amount of $1.5 million.
 
 
 3
 LMS claims that its interest in the contempt proceeding is both "personal" and "pecuniary" in the senses that its professional reputation is under attack and it has an ongoing pecuniary interest in the performance of the contract for the mitigation study with NYSDOT. But even if LMS's professional reputation were an interest cognizable under Rule 24, it is not an interest "relating ... to the subject of the action" or the upcoming contempt proceeding. The subject of the underlying action is the failure of the Corps and Federal Highway Administration (FHWA) to comply with the National Environmental Policy Act (NEPA) and the Clean Water Act. The subject of the contempt motion is whether the Corps, NYSDOT, and the FHWA have obeyed the district court's orders as modified and approved by this court. Whether or not there has been contempt of the district court's orders does not turn on LMS's professional reputation. While, to be sure, LMS's reputation was in a real sense involved in connection with the earlier findings, those findings are res judicata after affirmance by this court; indeed, LMS recognizes that it cannot reopen issues which the court has previously determined.
 
 
 4
 Perhaps the closest case in point is our own Rios v. Enterprise Association Steamfitters Local Union No. 638, 520 F.2d 352 (2d Cir.1975). The court had ordered affirmative action for the entry of black members into union "A" Branch. White members of union "B" Branch sought to intervene to assert that the union's preferences for members of "A" Branch discriminated against the members of "B" Branch. The court upheld a denial of intervention as of right on the basis that the would-be intervenors' exclusion from the other branch was a claim unrelated to the primary action, which was based on the union's duty under Title VII not to discriminate against non-whites in the admission of new members. In our case, as in Rios, the would-be intervenors' rights in reputation or good will and in respect to its contract are "grounded elsewhere," 520 F.2d at 358, that is, in LMS's relation to NYSDOT and not in the enforcement of the environmental laws.
 
 
 5
 Of course, a different case would be presented were the contempt motion grounded on the basis that delegation to LMS (as opposed to NYSDOT) was improper or that hiring LMS to do the mitigation study was forbidden by the district court's order because LMS is professionally incompetent to perform the study. Careful to cover this situation, the district court provided that "if and when the stage is reached that specific consideration is being given to any order which expressly details the activity of LMS or the funding for its work, consideration will be given to a renewed application by LMS for limited intervention."
 
 
 6
 New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York, 516 F.2d 350, 352 (2d Cir.1975) (per curiam), cited to us by LMS, is distinguishable. There the court permitted pharmacists selling prescription drugs to intervene in a challenge to a state-wide regulation prohibiting the advertisement of the prices of prescription drugs; the pharmacists would have been effectively bound by a judicial determination with respect to the challenged regulation. Here a conclusion that the Corps or NYSDOT has violated the court's prior orders would have in the present posture of the case at most an indirect effect, if any, on LMS. And even though NYSDOT's contract with LMS may be federally funded, there is no indication that the contractual liability of NYSDOT to LMS is conditioned on the federal funding or, if it were so conditioned, that LMS did not enter the contract with its eyes wide open.
 
 
 7
 Nor can the district court be said to have abused its discretion in denying intervention under Fed.R.Civ.P. 24(b)(2) because LMS's "claim or defense and the main action" do not "have a question of law or fact in common." While deference to discretion is a matter of degree, see Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 762-64 (1982), and while Rule 24(b) determinations are subject to a measure of appellate review, Rule 24(b) intervention often depends on factors with which the trial court is most familiar. Obviously a number of independent contractors are affected by the Westway project and court rulings on it. The trial court might properly consider the encumbering effect on the contempt proceeding of allowing intervention. To expand the number of litigants to include a consulting firm which, while it played a role in the events leading up to the order as to which the Corps and NYSDOT are sought to be held in contempt, is not alleged itself to have engaged in the misconduct resulting in the contempt motion, might unduly delay the contempt proceeding. If permitted to intervene, LMS may interpose interrogatories, take depositions, make objections, examine and cross-examine witnesses, and the like. In a case of this nature, irrespective of the outcome, it is important that the district court proceed expeditiously which, we hasten to add, the district court appears to be doing here. Factors including encumbrance of the proceeding and undue delay might properly be taken into account under Rule 24(b), and the district court's opinion indicates that it did so in this instance. We will not interject our appellate presence into the business at hand by overturning the district court's discretionary decision on the grounds suggested.
 
 
 8
 Judgment affirmed; motions to stay trial of the contempt action denied.