**Francisco PUJOL, Plaintiff,**

**v.**

**SHEARSON/AMERICAN EXPRESS, INC., et al., Defendants, Appellees,**

**Appeal of Ana Bonelli de Pujol, Plaintiff.**

**No. 88–1993**

United States Court of Appeals, First Circuit.

Heard March 1, 1989.

June 5, 1989.

Harold D. Vincente with whom Wallace Gonzalez Oliver was on brief, for appellant.

Philippe M. Salomon with whom Roger D. Netzer, Sharon L. Schnieder, Willkie Farr & Gallagher, New York City, Jay Garcia Gregory and Fiddler Gonzalez & Rodriguez, San Juan, P.R., were on brief, for defendants, appellees.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

BREYER, Circuit Judge.

This case is the remnant of litigation that Francisco Pujol and his wife Ana Bonelli de Pujol started against Shearson/American Express, Inc. ("Shearson"), basically claiming that Shearson improperly harmed Pujol, the President of its Puerto Rico Subsidiary (the "Subsidiary") while trying to cover up wrongdoing that Pujol had discovered.

In a previous decision, *Pujol v. Shearson/American Express, Inc.,* 829 F.2d 1201 (1st Cir.1987), we dismissed a host of claims that Pujol and Bonelli had brought against Shearson. But, we also held that Bonelli had stated causes of action for her own independent injuries. *Pujol,* 829 F.2d at 1208–09. We remanded those claims to the district court. Subsequently, that court dismissed Bonelli's claims, primarily

* Of the District of Massachusetts, sitting by desig-

because it believed that Fed.R.Civ.P. 19(b) required her to join the Subsidiary, as an indispensable party. Since joinder of the Subsidiary would destroy diversity jurisdiction, the district court dismissed the suit. Bonelli appeals. We agree with most of her claims.

I.

*Indispensable Party*

The basic question in this appeal is whether this case, as primarily characterized by the complaint and a few other documents in the record, falls within the scope of Rule 19(b). To understand this "indispensable party" issue, one must keep in mind both the language of Bonelli's complaint and the essential elements of Rule 19(b).

A. *The Complaint.* Bonelli's complaint now essentially consists of claims that Shearson invaded her privacy, converted and wrongfully attached her property, engaged in malicious prosecution, and negligently caused her emotional distress, when its officers and employees charged her husband, Francisco Pujol, with serious wrongdoing, fired him, started arbitration proceedings against him, and seized personal papers from his office. To be more specific, Bonelli's complaint says that Francisco Pujol, formerly president of the Subsidiary, discovered that employees of the Subsidiary "had continued selling Shearson ... securities to residents of Puerto Rico under the fraudulent and false representation that the income therefrom was tax exempt;" that Shearson continued a "cover-up" of the fraud by preparing an inadequate disclosure letter; that Pujol discovered "a number of" Subsidiary "transactions involving misuse of eligible ... funds in violation of the United States Internal Revenue Code" and several other laws; that Pujol expressed concern about these illegalities, and about "serious deficiencies in the internal controls" of Shearson and the Subsidiary, to officials of Shearson; and that Shearson officials, instead of punishing the wrongdoers, suspended Pujol, accused him

nation.

of "serious wrongdoing," seized "files and all belongings of Pujol and plaintiff Bonelli, including private documents of Bonelli which were in Pujol's office," and took various other steps "covering up the fraudulent conspiracies, and illegal actions on the part of Shearson and its officers."

B. *Rule 19.* Rule 19(b), which governs indispensable parties, works in two steps. Step one requires the district court to decide whether a person fits the definition of those who should "be joined if feasible" under Rule 19(a). That is to say, is the person (what used to be called) a "necessary" party? *See Provident Tradesmens Bank v. Patterson,* 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968). Rule 19(a) says that a person should be joined, when feasible,

> if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

If the person is a "necessary" party (*i.e.,* fits the definition of 19(a)), but joinder is not feasible, the court must take step two. It must decide, using four "factors," whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." That is to say, is the party "indispensable?" Rule 19(b) says that

> The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate reme-

dy if the action is dismissed for nonjoinder.

In applying Rule 19—a Rule that comes freighted with history, *see Provident Bank,* 390 U.S. at 120–25, 88 S.Ct. at 743–46; C. Wright, *The Law of Federal Courts* 458–61 (4th ed.1983); Hazard, "Indispensible Party: The Historical Origin of a Procedural Phantom," 61 Colum.L.Rev. 1254 (1961)–we must keep in mind the fact that this Rule aims to achieve a practical objective. *Provident Bank,* 390 U.S. at 106–07, 88 S.Ct. at 736–37 (finding of indispensability under Rule 19 "must be based on stated pragmatic considerations"); *Pulitzer–Polster v. Pulitzer,* 784 F.2d 1305, 1309 (5th Cir.1986) (Rule 19 "militate[s] in favor of a highly practical, fact-based decision"); *Schutten v. Shell Oil Co.,* 421 F.2d 869, 874 (5th Cir.1970) ("The watchwords of Rule 19 are 'pragmatism' and 'practicality.' "). Rule 19, together with the related Rules 20 (persons who may be joined as "permissive" parties), 23 (class actions), and 24 (intervention), aims "to achieve judicial economies of scale by resolving related issues in a single lawsuit," while at the same time preventing "the single lawsuit from becoming fruitlessly complex or unending." *Smuck v. Hobson,* 408 F.2d 175, 179 (D.C. Cir.1969). These rules seek to involve "as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (quoting *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C.Cir.1967)); Friedenthal, Kane & Miller, *Civil Procedure* 336 (1985) ("The basic objective underlying all claim and party joinder rules is rendering complete justice with as little litigation as possible.").

Thus, when applying Rule 19(a), a court essentially will decide whether considerations of efficiency and fairness, growing out of the particular circumstances of the case, require that a particular person be joined as a party. When applying Rule 19(b), the court will ask whether it is so important, in terms of efficiency or fairness, to join this person, that, in the person's absence, the suit should not go forward at all. *See Provident Bank,* 390 U.S. at 119, 88 S.Ct. at 743 (the decision whether

to dismiss under Rule 19(b) "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling in themselves, and some subject to balancing against opposing interests"); *Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir.1982) (Rule 19 "furthers several related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete relief in a single action, and the interest of absentees in avoiding" prejudice); Notes of Advisory Committee on Rule 19 ("persons materially interested in the subject of an action ... should be joined as parties so that they may be heard and a complete disposition made. When this comprehensive joinder cannot be accomplished ... the case should be examined pragmatically and a choice made" between proceeding in their absence and dismissing the case); Friedenthal, Kane & Miller, *supra,* at 335 (Rule 19 must be viewed in terms of a "continuum of interests" and demands a "flexible case-by-case analysis"); C. Wright, *supra,* at 462.

■ With these general considerations in mind, we turn to the relevant language of Rule 19. In this case, the first step in the Rule 19 analysis consists of deciding whether the Subsidiary "claims an interest relating to the subject of" Bonelli's "action and is so situated that the disposition of the action" in its absence may "as a practical matter impair or impede" the Subsidiary's "ability to protect that interest." Rule 19(a)(2)(i). If the Subsidiary fails to satisfy this test, it is not even a "Rule 19(a) person" who should be joined "if feasible," let alone a Rule 19(b) "indispensable party." The district court thought that the Subsidiary satisfied this test, but we do not.

For one thing, the Subsidiary's interests in this case are virtually identical to those of Shearson. Shearson, to win the case, will want to show that no one behaved improperly at its Subsidiary, that Pujol's charges were without foundation, and that its own actions in response to Pujol's baseless accusations were therefore reasonable. This is precisely what the Subsidiary would

wish to show. Moreover, since Shearson owns all the stock in the Subsidiary, and (as the parties apparently concede) the Subsidiary is a mere "corporate shell" existing separately from Shearson only ·on paper, any financial harm to the Subsidiary likely means harm to Shearson as well. It is true that the Subsidiary's "corporate alter ego" status does not, *by itself,* mean that the Subsidiary automatically falls outside Rule 19(a). *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559–60 (5th Cir. 1985) (courts may not overlook the separate identity of a wholly owned subsidiary ... where the subsidiary "is indispensable or needed for a full and just adjudication of the controversy"). But, in the circumstances of this case, it is one indication that Shearson's counsel's motives and ability to defend *Shearson* do not differ significantly, as a practical matter, from Shearson's counsel's motives and ability to defend the *Subsidiary's* interests as well.

Under these circumstances, were this an intervention motion brought under related Rule 24, *see Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 134 n. 3, 87 S.Ct. 932, 936 n. 3, 17 L.Ed.2d 814 (1967) (Rule 24(a)(2) is "counterpart to Rule 19(a)(2)(i)"); *CRI, Inc. v. Watson*, 608 F.2d 1137, 1140 (8th Cir.1979) (same); *Smuck*, 408 F.2d at 178 (same), we should conclude that the Subsidiary is "adequately represented" and cannot intervene as of right. *See Bottoms v. Dresser Industries*, 797 F.2d 869, 872 (10th Cir.1986) (when interests are "identical," representation is "presumptively adequate," and would-be intervenor must make "concrete showing of circumstances" making representation inadequate); *McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir.1979) (same, in regard to partners and partnership); *Blake v. Pallan*, 554 F.2d 947, 954–55 (9th Cir.1977); *Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir.1976). For similar reasons (to use the relevant language of Rule 19) we fail to see how proceeding without the Subsidiary would "as a practical matter impair or impede" the Subsidiary's interests, interests that Shearson's counsel can adequately protect. *See Prescription Plan Service*

*Corp. v. Franco,* 552 F.2d 493, 497 (2d Cir.1977) (denying Rule 19 motion because absentees' interests are identical to defendants'); *Wylain v. Kidde Consumer Durables Corp.,* 74 F.R.D. 434, 437 (D.Del.1977) (denying Rule 19 motion; absentees were "wholly within defendant's corporate family").

Shearson mentions only one concrete form of "prejudice" that failure to join the Subsidiary would cause. It says, in a footnote, that Bonelli's allegations about the Subsidiary's misconduct are "consistent with charges made against the Subsidiary in a separate action" brought by a federal agency, *FSLIC v. Shearson,* Civ. No. 84–0758 (RLA). Shearson does not explain how or why failure to join the Subsidiary would prejudice it in this separate action. Perhaps, it would suffer some unspecified collateral estoppel effect, or perhaps a verdict in Bonelli's favor, implying a finding of the Subsidiary's misconduct, "would be a persuasive precedent in a subsequent proceeding, and would weaken" the Subsidiary's "bargaining position for settlement purposes." *Acton,* 668 F.2d at 78. Even if this is so, however, as we have previously mentioned, Shearson's lawyers in this action have every incentive to bring about findings that would work in the Subsidiary's favor in the *FSLIC* case as well. At the least, Shearson has failed to explain why not.

For another thing, prejudice aside, we cannot find circumstances in this case sufficient to show that the Subsidiary is a necessary party under Rule 19(a)(2)(i). Shearson urges two sorts of circumstances, neither of which, in our view, is sufficient. First, Bonelli will likely introduce evidence indicating that the Subsidiary engaged in improper, perhaps criminal, behavior. Bonelli told the district court that she "certainly intends to introduce evidence of wrongdoing at the Subsidiary which triggered all the wrongdoing and all the aggressive acts of [Shearson] ... which caused damages" to her. And, the district court concluded that the introduction of such evidence, showing that the Subsidiary was an "active participant" in the overall sequence of events leading to the lawsuit,

*see H. D. Corp. of Puerto Rico v. Ford Motor Co.,* 791 F.2d 987, 993 (1st Cir.1986), would prejudice the Subsidiary unless it could join the suit and defend its actions.

The mere fact, however, that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party. Given the vast range of potential insults and allegations of impropriety that may be directed at non-parties in civil litigation, a contrary view would greatly expand the universe of Rule 19(a) necessary parties. It is therefore not surprising that cases interpreting Rule 19 consistently hold that such "slandered outsiders" need not be joined. In *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.,* 669 F.2d 667, 668–71 (11th Cir. 1982), for example, the plaintiff alleged that defendants "knowingly assisted" a non-party, Lowell Kramer, in a breach of Kramer's "fiduciary duty" to plaintiff. The court noted that "Lowell Kramer unquestionably has an interest in this litigation inasmuch as any recovery ... would be based on a finding that Lowell Kramer breached his fiduciary duty to [plaintiff] and was aided by [defendants]," but it concluded that Kramer "has absolutely no interest in the subject matter of the suit" (cancellation of a lease), and the judgment therefore "would have no effect, practical or otherwise, on Lowell Kramer." Thus, it held he was not a necessary party under Rule 19(a). In *Pasco International (London) Ltd. v. Stenograph Corp.,* 637 F.2d 496, 499–502 (7th Cir.1980), the complaint alleged that a competitor conspired with plaintiff's employee, Croxford, to induce a breach of contract and that Croxford was "falsely disparaging" plaintiff's financial condition. The court found, despite the potential "impact of the suit on Croxford's business reputation," that Croxford was not an indispensable party because "[a]ny agent will suffer some adverse consequences when his principal is held vicariously liable on account of the agent's conduct, but this is not a sufficient interest for finding the agent indispensable under Rule 19." *See Milligan v. Anderson,* 522 F.2d

1202, 1203–05 (10th Cir.1975) (although the "gist of the complaint was that [the absentee], acting as an agent for [the defendant], made false and fraudulent representations to the three plaintiffs," the absentee was not indispensable because he "had no personal interest, as such, in the contract" which plaintiffs sought to rescind); *Wylain,* 74 F.R.D. at 436–37 ("Whenever a judgment is entered against the principal on account of his agent's conduct, some adverse consequences to the agent may reasonably be expected, but it is clear, as a general matter, that the agent is not a necessary party under Rule 19(a)(2)(i)"); *Willis v. Semmes, Bowen & Semmes,* 441 F.Supp. 1235, 1245 (E.D.Va.1977) (complaint alleged malpractice by absentee law firm; absentee not indispensable because there was "no distinct subject matter" in which the absentee "has an interest that will be affected by this litigation").

Cases interpreting related Rule 24(a) have reached similar results. *See Sierra Club v. United States Army Corps of Engineers,* 709 F.2d 175, 176–77 (2d Cir.1983) (intervention denied because firm's concern that "its professional reputation is under attack" is not an interest relating to the subject of the action, and an adverse judgment would have, at most, an indirect effect on the firm); *Edmondson v. State of Nebraska,* 383 F.2d 123, 127 (8th Cir.1967) (would-be intervenor "asserts that his interest ... is provided by plaintiffs' allegation of his fraud and collusion," but the "mere fact" that proof of actions "amounted to fraud cannot serve as a basis for mandatory intervention without a showing that a legal detriment flows from this finding").

Second, Shearson points to circumstances present in this case which suggest that Shearson and its Subsidiary may be "*joint* tortfeasors," *i.e.,* that the Subsidiary's initial wrongdoing and Shearson's "coverup" together may have caused Bonelli's injuries. Insofar as Bonelli proves that Shearson and its Subsidiary are joint tortfeasors, a verdict in her favor conceivably could work to the Subsidiary's disadvantage in a later proceeding. *See Flynn v. Hubbard,* 782 F.2d 1084, 1089 (1st Cir.1986) (each joint tortfeasor is liable for the entire amount of the recovery). Yet, if one thing is clear in respect to Rule 19, it is that, unlike a person vicariously liable in tort, *see Freeman,* 754 F.2d at 559, a person potentially liable as a joint tortfeasor is *not* a necessary or indispensable party, but merely a permissive party subject to joinder under Rule 20. The drafters of Rule 19 stated that Rule 19(a)

is not at variance with the settled authorities holding that a tortfeasor with the usual "joint-and-several" liability is merely a permissive party to an action against another with like liability.

And, recent case law is consistent with the drafters' statement. *See Flynn,* 782 F.2d at 1089 (joint tortfeasors need not be joined under Rule 19); *Pasco,* 637 F.2d at 505 (joint tortfeasors are merely permissive parties).

Of course, one might wonder *why* Rule 19 would treat "joint tortfeasors" differently in this respect than, say, persons jointly liable under a contract. *See Acton,* 668 F.2d at 81–82 ("an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined"); *see also H.D. Corp.,* 791 F.2d at 993. The reason for the difference may lie in the history of joinder doctrine, *see* Hazard, *supra,* or it may reflect a compromise between the interests served by Rule 19 and the policies of tort law. *See Pasco,* 637 F.2d at 505 (even though joint tortfeasors are the "class of parties with claims most likely to lead to" further litigation, they are not indispensable parties; "the possibility of a subsequent suit based on [the joint tortfeasor] relationship was not an eventuality that Rule 19 was designed to avoid"); *United States v. Price,* 523 F.Supp. 1055, 1075 (D.N.J.1981) (although "equitable considerations" favor joinder, Rule 19 motion must be denied because the "traditional rule is that one tortfeasor may not compel the joinder" of other tortfeasors). But, regardless of the reasons, this case presents no basis for ignoring such well established precedent. The plaintiff, here, has specifically said that she does not intend to proceed against

the Subsidiary. And, the facts that Shearson wholly owns the Subsidiary, and seems likely to prove at least equally solvent, indicate that Bonelli would have no incentive to sue the Subsidiary in a later action.

Since we find no significant prejudice to the Subsidiary through failure to join it, and since we believe, in any event, that the case presents no circumstances that call for its joinder as a Rule 19(a) necessary party, we reverse the district court's dismissal of Bonelli's action for failure to join an indispensable party.

## II.

### Other Issues

This appeal raises several other, less significant, issues, which we need discuss only briefly.

1. The district court dismissed a second cause of action contained in Bonelli's complaint for a different reason, failure to state a proper legal claim. Fed.R.Civ.P. 12(b)(6). The district court thought that this portion of Bonelli's complaint stated a claim only for "malicious prosecution." It said that Bonelli "has failed to state a valid cause of action for malicious prosecution since she was not a party to the arbitration proceedings." Although Bonelli does not challenge this legal conclusion, she points out that her second cause of action, in addition to seeking relief for "wrongful uses of legal process," *also* states claims for "conversion" and "wrongful attachment" of Bonelli's personal property. The second cause of action incorporates by reference allegations of Shearson's "seizure" of her "personal files and documents" from Pujol's office; it alleges, further, that Bonelli was forced to spend (presumably for legal fees) "more than $40,000 to regain possession of her property." As we said in our prior decision, such allegations "could constitute conversion and/or abuse of process" as to Bonelli's personal property. *Pujol*, 829 F.2d at 1208 ("If Bonelli can prove that personal papers, documents and property belonging to her ... were subjected to the treatment alleged, then she has stated a cause of action.").

The second cause of action is not a model of clarity; it mixes together elements of malicious prosecution with elements of conversion. The requirements of pleading under the federal rules, however, are minimal; a claim may be dismissed only if, when construed in the manner most favorable to the plaintiff, "the pleading shows no set of facts which could entitle plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). Bonelli has met this minimal standard. Her second cause of action states valid claims for conversion and wrongful attachment. We must therefore reverse, in part, the district court's dismissal of the second cause of action.

2. Bonelli also urges us to find that the district court erred in refusing to award sanctions against Shearson in a discovery dispute. After reviewing the record, we can find no abuse of discretion in the district court's denial of sanctions. *See Kale v. Combined Insurance Co. of America*, 861 F.2d 746, 758 (1st Cir.1988) (since the district judge is a "firsthand observer" of the proceedings relevant to a motion for sanctions, "that judgment is one best left to the district judge").

3. Bonelli urges us to hold that she is entitled to summary judgment because of the collateral estoppel effect of an arbitration award in favor of her husband, Francisco Pujol. The district court, however, dismissed the action without reaching her summary judgment motion, so that issue is not properly before us on appeal. *See Pujol*, 829 F.2d at 1209.

*The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.*