BANK ONE TEXAS, N.A.

v.

LEASEWAY TRANSPORTATION
CORPORATION, et al.

Civ. A. No. 91–10322–Z.

United States District Court,
D. Massachusetts.

Aug. 7, 1991.

John M. Harrington, Jr., Kathryn Selleck, Ropes & Gray, Boston, Mass., for plaintiff.

Bernard Joseph Bonn, III, Timothy Charles Blank, Alicia Joy Reines–Leo, Dec-

hert Price & Rhoads, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff Bank One Texas ("Bank One") holds two notes executed by defendant Leaseway Transportation Corporation and various of its subsidiaries ("the Companies") for a face value of $15 million. It alleges that the Companies are in default and currently owe past due principal of $1,499,999.90 on the term loan and $1,758,-287.64 on the revolving credit loan.[1] Plaintiffs have moved for summary judgment and a stay of discovery; defendants have moved to dismiss for nonjoinder pursuant to Fed.R.Civ.P. 12(b)(7) and 19.

*Nonjoinder*

Bank One is one member of a consortium of banks which financed a leveraged buyout of the defendant Companies for $382,-000,000. For its part, MBank of Dallas (predecessor in interest to Bank One) made a Revolving Credit Loan in the face amount of $10,440,000 and a Term Loan in the face amount of $4,560,000 to the Companies. Both of the notes are governed by the Revolving Credit and Term Loan Agreement ("Credit Agreement"), to which the various consortium banks and the Companies are signatories. The Companies argue that the other consortium banks are necessary parties to the action, but because joining them will destroy diversity, the action must be dismissed.

■ The Companies only argue for joinder under Rule 19(a)(2), not 19(a)(1). Rule 19(a)(2) requires first that the persons to be joined "claim[ ] an interest relating to the subject of the action." The other banks do claim such an interest; their agent, Credit Agricole, has informed Bank One that subject to § 14.2 of the Credit Agreement, Bank One will be required to distribute its entire recovery to the other banks. The

second requirement of Rule 19(a)(2) is not met, however. The other banks' absence will not (i) as a practical matter impair or impede their ability to protect that interest, or (ii) leave the Companies subject to "inconsistent obligations" as a result. As a result, the other banks are not necessary parties under 19(a) nor can they be indispensable parties under 19(b). *See Pujol v. Shearson American Express, Inc.*, 877 F.2d 132, 135 (1st Cir.1989).

Regarding (i), the other banks can simply bring a breach of contract action against Bank One if they disagree on distribution of the recovery. No economies of scale would be achieved by introducing the other banks into this litigation,[2] however, while such an introduction would almost certainly make the basic litigation on the note "fruitlessly complex and unending." *Id.* at 134. The correspondence between Bank One and Credit Agricole indicates serious disagreement between the banks on a number of issues, and includes charges of breach of fiduciary obligations. Injecting into this litigation questions regarding the distribution of the recovery would inevitably cause rapid multiplication of the claims at issue, most of which would be tangentially related at best to the basic question of the Companies' note obligations.

As for (ii), the Companies claim that if they had to make payment to Bank One, they would be in "direct breach" of the Credit Agreement and would "incur 'inconsistent obligations' by reason of the claimed interests of the remaining Banks." It is unclear which provision they would be breaching, however, or what the obligation inconsistent with payment of past due amounts would be. The Companies suggest at one point that the remaining banks might sue them for breach, but the provision the banks would likely sue on, § 14.2, states clearly that it is an agreement among the Banks (and implicitly, not the Companies).[3]

---

1. The Companies paid the past due interest on these loans within the last few weeks.

2. Although they are aware of it, the other banks have yet to show any interest in participating in this litigation.

3. The possibility that the other banks might sue the Companies under the indemnification clause (§ 17) if the banks fail to recover their claimed share of the proceeds from Bank One is very remote.

■ Even if the other banks were necessary parties under 19(a), it is unclear whether they would destroy diversity if they were joined. Their citizenship is unstated, and it is uncertain whether they would be joined as plaintiffs or defendants. For all of these reasons, the Companies' motion to dismiss for nonjoinder pursuant to Fed.R.Civ.P. 12(b)(7) is denied.

*Summary Judgment*

Bank One has made a prima facie case by presenting the notes sued on, which the Companies admit executing. *See Baker v. Paeff*, 318 Mass. 366, 371, 61 N.E.2d 650, 653 (1945). The Companies oppose summary judgment, however, on the grounds that they need more time for discovery pursuant to Rule 56(f), and because genuine issues of fact remain.

The alleged issues of fact are as follows:

■ (1) *Amount Loaned*—Although the Companies can hardly dispute the face value of the notes ($15 million), they claim that they were loaned $11,460,000.[4] Bank One properly responds that this difference is immaterial as it only seeks past due amounts.

■ (2) *Amount Owing*—The Companies assert that Bank One has calculated this figure incorrectly, but they do not state how they think the calculation is incorrect or what the true amount should be in spite of the fact that this information should be within their possession.[5] Although a dispute over the amount of liability may block summary judgment in a case such as this, *see Savers Federal Sav. & Loan Ass'n v. Amberley Huntsville, Ltd.*, 934 F.2d 1201, 1210–11 (11th Cir.1991), summary judgment is not barred here.[6] The Companies have failed to identify with particularity the claimed correct amount of past due principal and what they fault in Bank One's calculations or how the requested discovery would give them that information.

(3) *Which Bank Should Receive Payment*—The Companies claim that the Credit Agreement requires them in § 6.7 to make payment to the Administrative Bank (Pittsburgh National) rather than Bank One; Bank One correctly responds that they should make payment to Bank One if Bank One prevails in the suit. The Credit Agreement itself contemplates in § 14.2 that payments might be made directly to individual banks as a result of voluntary payments or litigation.

■ (4) *Liability Limitations on Some Defendants*—Section 6.8 of the Credit Agreement limits the liability of a subset of the Companies, three of whom are being sued in this action. The Companies have failed to show, however, that the amount in dispute even approaches the limits specified, i.e. an aggregate limit of $175 million or 95% of book value of the assets of any one of the three defendants in question. Again, this information is within the Companies' possession; the Companies do not claim they need further discovery on this issue, nor can they.

■ (5) *Bank One's Entitlement to Any Payment*—The issue of whether Bank One is entitled to any payments under the Credit Agreement under § 14.2 is also the main one on which the Companies argue they need more discovery. Although this

---

**4.** The parties agree on the amount of the Term Loan; the difference is the amount of the Revolving Credit Loan.

**5.** The Supplemental Affidavit of Cheryl D. Edge states that the July interest payment made by the Companies, $367,923.99, was the interest due and owing as of June 30, 1991. There is a discrepancy between this figure and the one that is appropriate based on Ms. Edge's first affidavit, in that the Companies appear to have paid *more* than is required under the statements contained in the first affidavit.

**6.** One district court facing a dispute over amount of liability granted summary judgment to the extent of the defendant's claimed liability on a note, and referred the dispute over liability on the remainder to a magistrate. *See Signet Corp. v. Interbank Fin. Serv.*, 755 F.Supp. 103 (S.D.N.Y.1991).

argument appears to be the linchpin of the Companies' various motions and oppositions, it does not present an issue of fact. Section 14.1 of the Credit Agreement clearly permits Bank One to sue the Companies in the event of default; § 14.2 simply warns it that it can expect to share any proceeds with the other banks. This does not affect liability here, but only the question of how to divide the spoils of litigation, if any, later. Nothing in § 14.2 itself supports the claim that a "terminating bank" must go to the end of the line and wait for past due amounts until all the nonterminating banks have been paid in full.[7]

On the basis of the record, the alleged issues of fact that the Companies identify are either not material or not questions of fact. In light of this, more discovery on the issue the Companies have identified is not necessary. Bank One's motion for summary judgment is granted. Judgment in the amount of the past due principal, $3,258,287.54 may be entered for plaintiff.

---

**7.** The only provision in the Credit Agreement which suggests that a "terminating bank" may have to wait for payment on principal balance is § 2.3(d)(ii), which is mentioned only in correspondence between Credit Agricole and Bank One's agent, Bonnet Resources Corporation, regarding prepayments by the Companies. Clause (ii) of § 2.3(d), entitled "Optional Prepayment," states that the Companies "may ... *prepay* the principal balances of the Revolving Credit Notes of all Banks other than the Terminating Bank(s)...." (emphasis added) This clause concerns pre-payment of principal balances, not payment of past due amounts.