Julio DELGADO, Plaintiff,

v.

**PLAZA LAS AMERICAS, INC.,
et al., Defendants.**

Civil No. 95–1982(SEC).

United States District Court,
D. Puerto Rico.

April 28, 1997.

Jorge M. Suro–Ballester, San Juan, PR, for Plaintiff.

Iván M. Fernández, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending resolution are the jurisdictional issues raised sua sponte by this Court, to wit: whether plaintiff Julio Delgado's claim for the emotional pain and suffering generated by the rape of his daughter Nannette Delgado Ocasio meets the jurisdictional amount of $50,000.00, and whether the case should be dismissed pursuant to plaintiff's failure to join an indispensable party under Fed. R.Civ.P. 19. Upon careful review of the applicable law and the parties' arguments, we find that plaintiff's complaint fails to join an indispensable party. Upon application of the "gestalt" factors of Rule 19(b) and in the interest of efficiency and fairness to all the parties involved in the present action, plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE.**

### Factual Background

Plaintiff Julio Delgado is the father of Nannette Delgado Ocasio. On August 19, 1994 Nannette was sexually abused and raped by a man in the premises of the store Contempo Casuals located in the Plaza Las Americas shopping center. As a result of such sexual abuse and rape, the Police of the Commonwealth of Puerto Rico conducted an investigation and prepared complaint number 94–1–382–0616, as well as report number 1317.

Plaintiff filed the present complaint on August 4, 1995, against Plaza Las Americas, Inc. (Plaza Las Americas) and its insurer, Universal Insurance Company. The sexual abuse and rape of Nannette, plaintiff alleges, was caused by the fault and negligence of Plaza Las Americas. As a result of the sexual abuse and rape of his daughter Nannette, plaintiff Julio Delgado has experienced and is experiencing profound mental pain and anguish, which he values in an amount not less than $500,000. Plaintiff invokes federal jurisdiction pursuant to 28 U.S.C. § 1332, in view of the diversity of citizenship between the parties and the amount of the alleged harm, which surpasses $50,000.

On February 27, 1996, this Court issued upon plaintiff an order to show cause why this case should not be dismissed for (1) failure to meet the jurisdictional amount requirement and/or (2) nonjoinder of an indispensable party. **(Docket # 5)** *See In re Recticel Foam Corp.,* 859 F.2d 1000, 1002 (1st Cir.1988) ("Court has obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.")

On March 21, 1996, plaintiff complied with the Court's order, submitting a memorandum of law along with several sworn statements to buttress his allegations that the harm caused to him met the jurisdictional amount of $50,000.00. Plaintiff also argued that Nannette Delgado Ocasio, among others, is not an indispensable party, because different persons can file suit in different courts when their causes of action arise out of the same incident, since each has an independent cause of action. **(Docket # 6)** We proceed to analyze plaintiff's arguments seriatim.

### Jurisdictional Amount

In order to properly assess the complex and somewhat abstract issue of jurisdictional amount, we must examine the plaintiff's allegations.

In his motion complying with the order to show cause, plaintiff proffered several affidavits from Julio Delgado, as well as Nannette Delgado, Suzette Ocasio Gonzalez, ("Nannette's mother") Pedro Ocasio Trinidad and Elba Gonzalez Chabrier (maternal grandpar-

ents of Nannette). (Docket # 6, Exhibits 1–4) All of these persons assert the affective nature of plaintiff's relationship with his daughter. The affidavits are peppered with statements regarding the close relationship of the rape victim with his father, the constant communications sustained between them, and the emotional pain and suffering which plaintiff Julio Delgado allegedly suffered as a result of his daughter's rape.

■ Upon review of the pertinent documentation, the Court concludes that plaintiff has established that the amount over $50,000 stated in the complaint has been alleged in "good faith" and thus, meets the jurisdictional amount. *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1 (1st Cir.1995). *See also De León Lopez v. Corporación Insular de Seguros*, 931 F.2d 116 (1st Cir.1991). Accordingly, we decline to dismiss pursuant to that issue.

Plaintiff, however, is unable to surmount the "indispensable party" jurisdictional hurdle. We proceed to discuss the issue.

### Rule 19/Indispensable Party

We must engage in an analysis pursuant to Rule 19 to determine whether plaintiff Nannette Delgado Ocasio is an indispensable party, and if so, whether the unfeasibleness of her joinder counsels the dismissal of the above captioned case. The First Circuit has provided us with a cogent explanation of the appropriate "indispensable party" analysis under Rule 19 in *Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132 (1st Cir. 1989). We will cite generously from this opinion to guide our Rule 19 inquiry.

■ The Court explained in *Pujol:* "Rule 19(b), which governs indispensable parties, works in two steps. Step one requires the district court to decide whether a person fits the definition of those who should "be joined if feasible" under Rule 19(a). That is to say, is the person (what used to be called) a "necessary" party? *See Provident Tradesmens Bank v. Patterson*, 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968)." *Id.* at 134.

Federal Rule of Civil Procedure 19(a) requires the Court to join a person in the legal proceeding, when feasible, if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed.R.Civ.P. 19(a).

According to the First Circuit, once the Court determines that the person under scrutiny is a necessary party (i.e. fits the definition of 19(a), but joinder is not feasible) the court must inquire further. "It must decide, using four "factors," whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." That is to say, is the party "indispensable?"" *Pujol*, 877 F.2d at 134. Pursuant to Rule 19(b),

> The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b).

In *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108–111, 88 S.Ct. 733, 737–39, 19 L.Ed.2d 936 (1968), the Supreme Court explained the interests promoted by these four criteria as (1) the interest of the outsider whom it would have been desirable to join; (2) the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability it shares with another; (3) the interest of the courts and the public in complete, consistent and efficient settlement of controversies; and (4) the plaintiff's interest in having a forum. *See also H.D. Corp. of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987 (1st Cir.1986).

■ Furthermore, the First Circuit has stressed that Courts, upon applying Rule 19, "must keep in mind the fact that this Rule aims to achieve a practical objective ... Rule 19 ... aims 'to achieve judicial economies of scale by resolving related issues in a single lawsuit,' while at the same time preventing 'the single lawsuit from becoming fruitlessly complex or unending'... Friedenthal, Kane & Miller, *Civil Procedure* 336 (1985) ('The basic objective underlying all claim and party joinder rules is rendering complete justice with as little litigation as possible.')" *Pujol,* 877 F.2d at 134.

■ The Court adds that such Rule 19 "gestalt" analysis, while somewhat ambiguous and tailored to the idiosyncracies of each case, must be driven by the preeminent considerations of efficiency and fairness. The Court in *Pujol,* noted:

Thus, when applying Rule 19(a), a court essentially will decide whether considerations of **efficiency and fairness,** growing out of the particular circumstances of the case, require that a particular person be joined as a party. **When applying Rule 19(b), the court will ask whether it is so important, in terms of efficiency or fairness, to join this person, that in the person's absence, the suit should not go forward at all.** *See Provident Bank,* 390 U.S. at 119, 88 S.Ct. at 743 ... (the decision whether to dismiss under Rule 19(b) "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling in themselves, and some subject to balancing against opposing interests"); *Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir.1982) (Rule 19 **"furthers several related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete relief in a single action, and the interest of absentees in**

avoiding" prejudice);** Notes of Advisory Committee on Rule 19 ("persons materially interested in the subject of an action ... should be joined as parties so that they may be heard and a complete disposition made. **When this comprehensive joinder cannot be accomplished ... the case should be examined pragmatically and a choice made" between proceeding in their absence and dismissing the case);** Friedenthal, Kane & Miller, supra at 335 (Rule 19 must be viewed in terms of a "continuum of interests" and demands a "flexible case-by-case analysis ...)" *Id.* at 134–135. (Emphasis added)

### Application of Rule 19(a)

■ With all this in mind, we proceed to engage in the two-step analysis, pursuant to Rule 19(a) and (b).[1] Rule 19(a)(1) does not seem applicable in the present case. The Court concludes that complete relief could be accorded among those already parties even in the absence of Nannette Delgado Ocasio. Plaintiff Julio Delgado acknowledges that his daughter Nannette Delgado Ocasio filed a parallel lawsuit in the courts of the Commonwealth of Puerto Rico. However, plaintiff claims that she is not a necessary party, because different persons can file suit in different courts when their causes of action arise out of the same incident, since each has an independent cause of action. Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 2d § 1623, p. 349. Accordingly, complete relief may be awarded to plaintiff Julio Delgado at the federal proceeding for his own mental pain and suffering as a result of his daughter's rape, independent of any harm claimed by Nannette Delgado Ocasio.

Rule 19(a)(2), however, is directly applicable to the case at hand. In the present case, Ms. Nannette Delgado can be considered a necessary party pursuant to 19(a)(2)(ii). Ms. Delgado, as evidenced by her legal action commenced in the Commonwealth Court

---

1. Wright and Miller note: "There is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a). The decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them. Account also must be taken of whether other alternatives are available to the litigants. By its very nature Rule 19(a) calls for determinations that are heavily influenced by the facts and circumstances of individual cases ..." Id. at § 1604, p. 40.

against defendants Plaza Las Americas and Universal Insurance, is claiming an interest relating to the subject of the present action; by doing so, she is so situated that the disposition of the federal proceeding in her absence may leave defendants Plaza Las Americas and Universal Insurance, already parties in the present action, subject to a substantial risk of incurring multiple or otherwise inconsistent obligations by reason of the claimed interest.

A verdict against defendants in either the federal or Commonwealth proceedings may impose multiple and/or inconsistent obligations upon defendants Plaza Las Americas Inc and Universal Insurance Company. We note the incongruity of the parallel actions, where all the immediate family members of Nannette Delgado Ocasio have filed their present claim in the Commonwealth court, whereas plaintiff Julio Delgado is the sole plaintiff in this federal litigation in the federal district court of Puerto Rico against the same defendants. It seems highly inefficient to this Court that these family members must litigate a few miles apart from each other on the same exact incident which generated their respective causes of actions, predicated on Article 1802 of the Civil Code of Puerto Rico. Moreover, it is very likely that Ms. Nannette Delgado Ocasio would have to testify in both proceedings, since she had personal knowledge of the unfortunate incident which led to her sexual assault, a procedural incident which seems highly inefficient and wasteful of judicial resources.

Simply put, Ms. Ocasio's absence in the federal proceedings compels defendants to defend themselves twice for the same allegations of negligence at the local and the federal level. A verdict in their favor at the state level would not preclude a finding of liability in the federal litigation, since the doctrine of res judicata and issue preclusion would not bind plaintiff Julio Ocasio. Plaintiff can claim that the principles of res judicata and issue preclusion would not apply to him in the event of a favorable verdict for the defendants in the Commonwealth court, since he did not have the opportunity to fully and fairly litigate his claim in that forum. The

case law bolsters plaintiffs contention. *See Harris v. Illinois–California Express, Inc.*, 687 F.2d 1361 (10th Cir.1982); *Sove v. Smith*, 311 F.2d 5 (6th Cir.1962). Although defendants may claim that plaintiff Julio Delgado had an opportunity to litigate his claim in the state court if he had chosen to join that action, and thus an earlier ruling in the Commonwealth should have preclusive effect against him, the general rule militates against this conclusion. Wright and Miller note: "The basic rule that a nonparty is not obliged to seize an available opportunity to intervene in pending litigation that presents questions affecting the nonparty was clearly stated in *Chase National Bank v. City of Norwalk*." Wright, Miller & Kane, *Federal Practice and Procedure*, § 4452, p. 447. In that case, the Court noted: "The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger ... unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights." *Chase National Bank v. City of Norwalk*, 291 U.S. 431, 441, 54 S.Ct. 475, 479, 78 L.Ed. 894 (1934). In the present case, there is no privity between the plaintiff Julio Delgado and plaintiffs in the Commonwealth case. Accordingly, the doctrine of res judicata would not apply to plaintiff Julio Delgado.

Conversely, a favorable verdict for defendants at the federal proceeding would not guarantee a successful verdict in the Commonwealth proceedings, since plaintiffs Nannette Delgado and the other plaintiffs would not be bound by the previous judgment. Indeed, the Court could not have joined them as plaintiffs in the federal litigation, since they are citizens of the same state as the defendants, and thus diversity jurisdiction would not attach. Ironically, a verdict in either Court could result in application of the doctrine of res judicata against the defendants, since plaintiffs could invoke the doctrine of "offensive use of collateral estoppel" against defendants to preclude the relitigation of issues already adjudicated against them in either court.[2]

2. Offensive use of collateral estoppel occurs

when plaintiff seeks to foreclose defendant from

This is precisely the type of situation which Rule 19(a) seeks to avoid.[3] Accordingly, we find that plaintiff Nannette Delgado Ocasio is a necessary party, pursuant to Rule 19(a). Having determined that Ms. Nannette Delgado Ocasio is a necessary party, and that joinder is not feasible, since joining her would destroy diversity jurisdiction, we engage in the gestalt analysis prescribed by Rule 19(b) to determine whether "in equity and good conscience the action should proceed among the parties" before the Court. Fed.R.Civ.P. 19(b).

**Rule 19(b) Application of Gestalt Factors to Determine Whether Dismissal is Proper**

■ We must engage in this analysis pursuant to the above mentioned factors which comprise Rule 19(b). Most importantly, we emphasize the case-by-case nature of this analysis.

**a) Degree of Prejudice To Nonparty or Those Already Parties by Judgment Rendered in the Nonparty's Absence**

The Court notes that a judgment rendered either in favor or against defendants in the present case would create significant prejudice to the defendants, who are already parties in this case. As noted above, the possibility of inconsistent or multiple verdicts might prompt defendants to expend substantial resources in devising different legal strategies in the local and federal forums. This is a distinct possibility in the present case, given the disparate nature of civil proceedings in the Commonwealth and the Federal District Court of Puerto Rico. At the commonwealth level, there is no jury system in civil proceedings, whereas in the federal district court, plaintiff is entitled to a jury trial, pursuant to the Seventh Amendment of the Constitution of the United States and Fed.R.Civ.P. 38(a).[4]

**b) Extent to Which, by Protective Provisions in the Judgment, by the Shaping of Relief, or Other Measures, the Prejudice can be Lessened or Avoided**

The Court fails to discern any protective provisions in the judgment which could significantly lessen or avoid prejudice to defendants, were the case to continue. Indeed, as noted previously, should this Court render a verdict against defendants, that judgment would have preclusive effect against defendants in the Commonwealth proceedings.

**c) Adequacy of Judgment Rendered in the Person's Absence**

The third factor ostensibly counsels against dismissal of the federal action, since plaintiff could obtain an adequate verdict against defendants in the federal proceedings. However, a substantial money judgment in the state court may affect the adequacy of recovery in the federal court. Although we will not delve into the extent of liability insurance obtained by defendant Plaza Las Americas, we must acknowledge that the liability of defendants in either proceeding may, as a practical matter, affect plaintiffs' recovery in the latter litigation.

**d) Whether the Plaintiff Will Have an Adequate Remedy if the Action is Dismissed for Nonjoinder.**

Finally, and perhaps more importantly, plaintiff Julio Ocasio will have an adequate remedy if the action is dismissed for nonjoinder. The Court finds that, taking into ac-

litigating an issue the defendant previously litigated unsuccessfully in an action with another party. In *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979), the Court held that the litigant who was not a party to a prior judgment may nevertheless use that judgment "offensively" to prevent the defendant in the subsequent proceeding from relitigating issues in the earlier proceeding.

3. See *Haas v. Jefferson National Bank of Miami Beach*, 442 F.2d 394, 398 (5th Cir.1971); Wright,

Miller & Kane, Federal Practice and Procedure: Civil 2d § 1604, p. 58–60.

4. This Court notes that the jury/non-jury dichotomy prevalent in Puerto Rico is somewhat unique. In almost all, if not all, of the States, juries are available in comparable civil proceedings. This dichotomy creates a built-in incentive for parties to generate duplicitous litigation in the federal forum where juries usually award higher verdicts than those obtainable in the Commonwealth courts.

count the paramount principles of fairness and efficiency, plaintiff Julio Ocasio would have an adequate remedy in the Commonwealth Court. The filing of his action at the federal level tolled the applicable statute of limitations against defendants, so he may seek joinder in the Commonwealth court action. A joinder of plaintiff in the Commonwealth court action upon his dismissal in the present action would cause little prejudice to defendants, since they are already familiar with the plaintiff's allegations. The early stage of litigation in the present proceeding also counsels for dismissal, since there has been little discovery and the dismissal will not cause undue prejudice to plaintiff.

Most importantly, the joinder of plaintiff Julio Delgado in the Commonwealth court proceeding will result in a more efficient resolution of a single controversy, where all the claims of all the plaintiffs can be adjudicated pursuant to Puerto Rico law, without the prospect of inconsistent verdicts regarding negligence, causality or damages. As noted by defendants the discovery proceedings in the civil action filed in the Superior Court of San Juan are at a very advanced stage. The parties in that action have filed written interrogatories and answers, and production of documents have also taken place. Furthermore, plaintiffs have taken the deposition of an officer of the defendants and the defendants deposed the plaintiffs. Finally it should be noted that plaintiff's counsel in the present action, Mr. Jorge M. Suro Ballester also serves as the attorney for plaintiffs in the Commonwealth Court proceedings. (**Docket # 17**) Counsel for plaintiff is already familiar with the proceedings at the Commonwealth court, so there would not be substantial prejudice with the joinder of a single additional plaintiff to the Commonwealth litigation.

As noted previously, the Supreme Court identified one of the essential factors in the 19(b) analysis as "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Provident Tradesmens Bank & Trust Co. v. Patterson* 390 U.S. at 111, 88 S.Ct. at 739. This case presents a particularly compelling scenario to foster these objectives. As the First

Circuit noted in an earlier case dismissing a complaint pursuant to Rule 19, "[w]e have no doubt that the Commonwealth court is capable of resolving the entire controversy between the parties ... the public interest in avoiding piecemeal and inefficient litigation is especially strong ... where it is evident that the ongoing state court action will adjudicate the entire controversy." *H.D. Corp of Puerto Rico v. Ford Motor Co.*, 791 F.2d at 993 (Citing *Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 81.) It is ineluctably clear, given the circumstances of this case, that the Commonwealth court is eminently prepared to adjudicate the entire controversy, applying the law of the Commonwealth.

Pursuant to the abovementioned discussion, we hereby **DISMISS** plaintiff Julio Delgado's complaint in the present case. We note that this dismissal shall be **without prejudice**, so that plaintiff may seek reinstatement of the present complaint in the event that the Commonwealth court denies plaintiff Julio Delgado's request to join as co-plaintiff in the local proceedings. Judgment shall follow accordingly.

**SO ORDERED.**